**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| NIKI DASILVA, SAMANTHA LOZANO, GABRIELLE MCLEMORE and MARA REARDON, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )  Case No.:  1:19-cv-2453 |
| STATE OF INDIANA and CURTIS T. HILL, JR., individually and in his capacity as the Indiana Attorney General, | ) ) ) ) |
| Defendants. | ) ) |

## PLAINTIFFS' COMPLAINT AND JURY TRIAL DEMAND

Plaintiffs Niki DaSilva, Samantha Lozano, Gabrielle McLemore, and Mara Candelaria Reardon (collectively referred to as "Plaintiffs"), by counsel, for their Complaint and Jury Trial Demand against Defendants the State of Indiana and Curtis T. Hill, Jr., individually and in his capacity as the Indiana Attorney General (collectively, "Defendants"), state as follows:

### JURISDICTION AND VENUE

1.      This is an action for money damages, injunctive relief, and other equitable relief. This action arises out of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.*, ("Title VII"), the First and Fourteenth Amendment to the Constitution of the United States pursuant to 42 U.S.C. § 1983 ("§ 1983"), and under the laws of the State of Indiana for claims of battery, sexual battery, defamation, and false light invasion of privacy.

2.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiffs' state law claims arising out of Indiana law pursuant to 28 U.S.C. § 1367.

3.      Venue is appropriate in the United States District Court for the Southern District of Indiana, Indianapolis Division, because all the alleged unlawful practices occurred in Marion County, Indiana.

## PARTIES

4.      Plaintiff Niki DaSilva ("Ms. DaSilva") is a citizen of the United States of America and the State of Indiana and resides in Marion County, Indiana.

5.      Plaintiff Samantha Lozano ("Ms. Lozano") is a citizen of the United States of America and the State of Indiana and resides in Marion County, Indiana.

6.      Plaintiff Gabrielle McLemore ("Ms. McLemore") is a citizen of the United States of America and the State of Indiana and resides in Johnson County, Indiana.

7.      Plaintiff Mara Candelaria Reardon ("Ms. Reardon") is a citizen of the United States of America and the State of Indiana and resides in Lake County, Indiana.

8.      At all relevant times, Ms. DaSilva, Ms. Lozano and Ms. McLemore were "employees" within the meaning of Title VII.

9.      At all relevant times, Ms. DaSilva, Ms. Lozano, Ms. McLemore and Ms. Reardon were "persons" within the meaning of § 1983, and citizens of the State of Indiana.

10.      Defendant Curtis T. Hill, Jr. ("Hill"), sued in his individual and official capacity, was at all relevant times the Indiana Attorney General of the Office of the Indiana Attorney General.

11.      Defendant Hill, in his individual capacity, is a "person" within the meaning of § 1983.

12.      Defendant State of Indiana is a "person" within the meaning of § 1983 for purposes of the Plaintiffs' claims for injunctive and equitable relief.

13.     At all relevant times, Defendant State of Indiana, was an "employer" within the meaning of Title VII.

14.     Defendant State of Indiana is a person within the meaning of § 1983 for purposes of the Plaintiffs' claims for injunctive and equitable relief.

## ADMINISTRATIVE PROCEDURES

15.     On October 23, 2018, Ms. DaSilva timely filed a *Charge of Discrimination* with the Indianapolis District of the Equal Employment Opportunity Commission ("EEOC"). On May 14, 2019, the EEOC mailed a *Notice of Right to Sue* ("DaSilva Notice"), giving Ms. DaSilva ninety (90) days to commence legal action. This action is being initiated within ninety (90) days of Ms. DaSilva's receipt of the Notice. A true and correct copy of the Notice is attached as **Exhibit 1**.

16.      On October 23, 2018, Ms. Lozano timely filed a *Charge of Discrimination* with the EEOC. On May 14, 2019, the EEOC mailed a *Notice of Right to Sue* ("Lozano Notice"), giving Ms. Lozano ninety (90) days to commence legal action. This action is being initiated within ninety (90) days of Ms. Lozano's receipt of the Notice. A true and correct copy of the Notice is attached as **Exhibit 2**.

17.     On October 23, 2018, Ms. McLemore timely filed a *Charge of Discrimination* with the EEOC. On May 14, 2019, the EEOC mailed a *Notice of Right to Sue* ("McLemore Notice"), giving Ms. McLemore ninety (90) days to commence legal action. This action is being initiated within ninety (90) days of Ms. McLemore's receipt of the Notice. A true and correct copy of the Notice is attached as **Exhibit 3**.

18.     On October 22, 2018, Plaintiffs served Defendants a *Notice of Tort Claim* via hand-delivery and certified mail. Defendants did not respond to Plaintiffs' *Notice of Tort Claim.* More than ninety (90) have passed since the Plaintiffs served their *Notice of Tort Claim* on Defendants.

## FACTUAL ALLEGATIONS

***The Plaintiffs***

19.    The Plaintiffs all work for the State of Indiana in or around the Indiana General Assembly.

20.    The Indiana General Assembly is the state legislature, or legislative branch, of the State of Indiana.

21.    The Indiana General Assembly consists of the Indiana House of Representatives ("House") and the Indiana Senate ("Senate").

22.    The General Assembly meets annually at the Indiana Statehouse ("Statehouse") in Indianapolis, but does not meet year-round.

23.    Instead, the General Assembly convenes on the first Tuesday after the first Monday in January.

24.    During odd-numbered years, the legislature meets for sixty-one (61) days (not necessarily consecutively) and must be adjourned by April 30.

25.    During even-numbered years, the legislature meets for thirty (30) days (not necessarily consecutively) and must be adjourned by March 15.

26.    The end or adjournment of the legislative session is referred to as Sine Die.

27.    Ms. DaSilva has worked for the State of Indiana since December 22, 2015.

28.    Ms. DaSilva currently is a Legislative Assistant for the Indiana Senate Republican Caucus and has been in this position since June 6, 2016.

29.    Ms. Lozano has worked for the State of Indiana since 2017.

30.    Ms. Lozano currently is a Legislative Assistant for State Representatives Mara Candelaria Reardon, Sue Errington, and Ed DeLaney and has been a Legislative Assistant since January 2018.

31.    Ms. McLemore has worked for the State of Indiana since September 2016.

32.    Ms. McLemore currently is the Communications Director for the Indiana Senate Democrats and has been in this position since May 2018.

33.    Ms. Reardon is a member of the House, representing the 12th District of Indiana. Ms. Reardon was first elected to the Indiana General Assembly in 2006.

### *Curtis T. Hill, Jr.*

34.    Hill is currently the Attorney General for the State of Indiana.

35.    Hill was elected in 2016 and assumed office January 9, 2017.

36.    Hill is Indiana's highest law enforcement official.

### *Sine Die 2018*

37.    In 2018, the Indiana General Assembly adjourned shortly after midnight on March 15, 2018.

38.    After Sine Die, members of the House and Senate, legislative staff, and lobbyists typically go out to celebrate the end of the legislative session (the "Sine Die Celebration").

39.    In the early hours of March 15, 2018, consistent with a long-standing tradition, lawmakers, staff, and others engaged in the legislative process gathered to mark the end of the legislative session.

40.    In 2018, as in many prior years, the Sine Die Celebration was held at AJ's Lounge in Indianapolis, Indiana ("AJ's Lounge" or "AJ's").

41.     On March 15, 2018, after Sine Die, Ms. DaSilva headed to AJ's Lounge with several of her co-workers.

42.     When she arrived, Ms. DaSilva walked toward the bar to join three (3) of her female colleagues.

43.     The group chatted while waiting to be served when Hill approached them.

44.     Ms. DaSilva was surprised to see Hill at AJ's, as Sine Die is meant to be a celebration among legislators, staff and lobbyists.

45.     Upon information and belief, no other Attorney General had ever attended a Sine Die Celebration. Hill is not involved in the legislative process, nor a member of the General Assembly, and from the perspective of the Plaintiffs and many others, was not an expected attendee at the Sine Die Celebration.

46.     Ms. DaSilva observed that Hill seemed rather gregarious. He approached her and her group of friends and asked what they were doing standing at the bar.

47.     The group answered that they were waiting to order a drink and Hill remarked, "Ah, come on ladies! You haven't figured out how to get a drink yet? You've got to show a little skin!".

48.     In that moment, Ms. DaSilva's mouth fell open in shock.  She was stunned that Hill, the Indiana Attorney General, told her to "show a little skin."

49.     Ms. DaSilva turned to her colleagues and asked them to confirm what she had just heard.  Her colleagues acknowledged that Hill did indeed tell them to show some skin.

50.     Ms. DaSilva then moved around the corner of the bar top to put some distance between herself and Hill, who was hovering nearby.

51.     Two (2) of the four (4) women received their drinks and left the bar area, leaving Ms. DaSilva and another co-worker, Ms. Lozano, at the bar with Hill.

*DaSilva, Lozano, McLemore and Reardon v. The State of Indiana and Curtis T. Hill, Jr.*

52.     Ms. DaSilva was getting ready to leave and join another group when she observed Ms. Lozano's eyes widen, signaling Ms. DaSilva to come closer.

53.     When Ms. DaSilva approached, Ms. Lozano whispered, "Please don't leave me alone with him. He's being really weird."   Ms. DaSilva then positioned herself between Ms. Lozano and Hill to act as a buffer and prevent further contact between Lozano and Hill.

54.     After a few moments, Hill put his hand on Ms. DaSilva's back. Ms. DaSilva was taken aback by this gesture.

55.     Ms. DaSilva felt Hill's hand start to slide slowly down her back.  She tried to push his hand away.  When their hands met, instead of taking the nudge as a cue to remove his hand from her lower back, Hill grabbed Ms. DaSilva's hand at her wrist and moved both of their hands over her buttocks, lingering there before eventually releasing her hand.  Hill looked at Ms. DaSilva with a grin on his face and continued the conversation. Ms. DaSilva made it clear to Hill that his unlawful acts were not consensual and were unwelcome.

56.     Soon after, Ms. DaSilva and Ms. Lozano found an escape route and moved away from the area to avoid further interaction with Hill.

57.     On March 15, 2018, Ms. Lozano and her intern accompanied Ms. Reardon to AJ's Lounge.

58.     As Ms. Lozano entered AJ's behind Ms. Reardon. Ms. Lozano saw Hill lean toward Ms. Reardon, place his hand on her back and slide his hand down to Ms. Reardon's buttocks and grab Ms. Reardon underneath her dress.

59.     Ms. Lozano was appalled by Hill's behavior and observed that Ms. Reardon appeared shocked as well.

60.     Later, Ms. Lozano approached the bar to order some drinks with her co-workers. Hill was at the bar.

61.     Ms. Lozano noticed that Hill had a drink in his hand and smelled like alcohol.

62.     Hill asked Ms. Lozano, "Do you know who I am?" Ms. Lozano responded that she did know that he was the Indiana Attorney General and that she attended college with his daughter.

63.     Ms. Lozano hoped that Hill would leave her alone and not make any unwelcome sexual advances towards her if he knew she was the same age as his daughter.

64.     As Ms. Lozano ordered drinks with her co-workers she commented, "it's really hot in here." Hill responded, "Yes, you're really hot."

65.     Ms. Lozano thought Hill's statement was disturbing and inappropriate, especially after she had just told Hill that she attended college with his daughter, and particularly in light of seeing how he treated Ms. Reardon.

66.     Hill then grabbed Ms. Lozano around the waist and pulled her close to him.

67.     Ms. Lozano looked at her colleague, Ms. DaSilva, made eye contact with her and said, "Don't leave me alone with him, he's acting weird."

68.     Ms. DaSilva observed that Hill had grabbed Ms. Lozano and was touching her without consent.

69.     Ms. DaSilva then got in between Ms. Lozano and Hill to prevent further unwelcome physical contact between them.

70.     On March 15, 2018, Ms. McLemore also went to AJ's to celebrate the end of the legislative session.

71.     Ms. McLemore arrived at AJ's with several of her co-workers.

72.    During the gathering, Hill approached Ms. McLemore, who was leaning up against the bar, and said, "Do you know who I am?" as he pulled up a stool next to Ms. McLemore, forcing her to move uncomfortably closer to the bar's ledge on her right with people both in front and behind her.

73.    Hill cornered and trapped Ms. McLemore and began rubbing her back without her consent.

74.    Hill did not just touch Ms. McLemore's back. He instead used his entire hand to rub up and down Ms. McLemore's back for a period of time.

75.    Hill's conduct was unwelcome and not consensual.

76.    Ms. McLemore mouthed "HELP ME" to her intern who helped Ms. McLemore get away from Hill.

77.    Ms. Reardon also went to AJ's Lounge to celebrate the end of the legislative session.

78.    Shortly after she arrived, Ms. Reardon encountered Hill.

79.    Ms. Reardon was quite surprised to see Hill at the Sine Die Celebration, because in her twelve (12) years in and around the General Assembly, she had not seen any other Attorney General attend a Sine Die Celebration.

80.    Hill greeted Ms. Reardon and Ms. Lozano.

81.    Ms. Reardon does not know Hill personally, but they had met before on a few occasions.

82.    As they were exchanging pleasantries, Hill leaned toward Ms. Reardon, placed his hand on her back and slid his hand down, underneath her dress, reached to her buttocks and grabbed it.

*DaSilva, Lozano, McLemore and Reardon v. The State of Indiana and Curtis T. Hill, Jr.*

83.     Ms. Reardon said, "back off," explicitly telling Hill that his actions were unwelcome and not consensual and walked away. Ms. Lozano, who observed this encounter, stood nearby, shocked by what she had just witnessed.

84.     Later, Ms. Reardon was standing with a group of people, and Hill approached the group.

85.     Hill came up behind Ms. Reardon and put his hand on her back a second time and said, "That skin. That back."

86.     Ms. Reardon recoiled away before Hill could touch her buttocks again, despite his efforts to do so.

### *Plaintiffs' Complaints About Hill's Illegal Conduct*

87.     In or around April 2018, a few weeks following the Sine Die Celebration, Ms. Reardon had lunch with a fellow legislator and with Ms. Lozano.

88.     Ms. Reardon learned from Ms. Lozano that Hill's unlawful conduct directed towards her at Ms. Reardon at the Sine Die Celebration was not an isolated event.

89.     Ms. Lozano reported to Ms. Reardon that Hill targeted several other women at the Sine Die Celebration, including herself.

90.     Upon learning of Hill's pervasive and repeated attempts to sexually harass and assault several women, Ms. Reardon believed that she had an obligation to report Hill's unlawful conduct to House leadership.

91.     On or around May 14, 2018, Ms. Reardon went to the Democratic leadership to report these incidents.

92.     Afterwards, Ms. Reardon and Ms. Lozano went together to the Speaker of the House, Brian Bosma ("Bosma"), where Ms. Reardon reiterated her report of Hill's unlawful conduct at the Sine Die Celebration.

93.     Thereafter, staff attorneys with the General Assembly interviewed at least six (6) women.

94.     The General Assembly attorneys did not interview Ms. Reardon regarding Hill's conduct at the Sine Die Celebration.

95.     The General Assembly attorneys did not interview Hill.

96.     The law firm representing the Legislative Services Agency prepared a memorandum analyzing the March 15, 2018 allegations.

97.     The Memorandum, dated June 18, 2018, detailed the investigation and the risk of liability (the "Taft Memo").

98.     On or around July 2, 2018, the Taft Memo was leaked to the press.

99.     When the Taft Memo first leaked, upon information and belief, Hill told his staff that he was not at AJ's Lounge on the night in question.

100.    Before Ms. McLemore became known as one (1) of the accusers, she had to prepare a press release for Senator Lanane regarding her allegations and answer questions received from the media.

101.    Being required to do so caused Ms. McLemore to be placed in an awkward and inappropriate position, particularly because her role as Communications Director required her to advise her employer of the best course of action, which was met with apprehension by the employer.

102.     After coming forward to complain, Bosma told Ms. Lozano that the House could not do anything to Hill. Bosma advised Lozano that he was happy she came forward, that Hill was asked not to attend functions, but "it's a free country and [the House of Representatives] can't stop him."

103.     After publication of the Taft Memo, Ms. Reardon received correspondence dated July 14, 2018 from an anonymous supporter who wrote:

> Thank you for your courage. I admire your willingness to speak out and not tolerate Curtis Hill's repulsive advances. You are an example for other women and this man must be stopped. His pattern of behavior and lack of respect for women is disgraceful. There are many apprehensive victims of his unwanted pursuits supporting you in silence from his hometown. It takes a great deal of bravery to stand up to a man like him. I am very proud of you! Remain steadfast, for you are making a difference! Bless you.

### After Complaining, Hill and the State of Indiana Retaliated Against and Defamed the Plaintiffs

104.     After the Plaintiffs complained about Hill's unlawful conduct, Hill and the State of Indiana engaged in unlawful retaliation.

105.     For instance, Hill has used the Office of the Attorney General to threaten, intimidate, and defame the Plaintiffs.

106.     In addition, Hill has used his official State of Indiana Attorney General Twitter and Facebook accounts to threaten, intimidate, and defame the Plaintiffs.

107.     In July 2018, Hill issued a written statement on www.CURTISHILLFORINDIANA.com where he made the following false, disparaging, and defamatory statements:

- "The allegations against me, which continue to change, are vicious and false."

- "At no time did I ever grab or touch anyone inappropriately."

- "At least one story has dramatically changed from the document that was the basis for all the calls for resignation."

- "A key witness confirmed that her accusation contained in the confidential report was materially inaccurate."

108. On or around July 7, 2018, during a press conference held at the Office of the Indiana Attorney General, Hill made statements to the public that the complaints made against him are false and that he is falsely accused.

109. During the July 7, 2018 press conference, Hill also called the allegations "materially inaccurate."

110. Hill has also stated that the Plaintiffs' allegations are "deeply troubling," "viciously false," and "contain numerous misstatements and misrepresentations."

111. Hill denied that he engaged in inappropriate behavior with anyone.

112. Hill stated that he is "falsely and publicly accused of abhorrent behavior."

113. Hill stated that the accusations have "irretrievably damaged his reputation."

114. Hill called Ms. Reardon's allegations "materially inaccurate" and stated that Ms. Reardon confirmed such inaccuracies.

115. Throughout July and August 2018, campaign funds were used to purchase sponsored Facebook advertisements on the "Curtis Hill for Indiana" Facebook page questioning the credibility, fairness, and accuracy of the Plaintiffs' reports and all investigations thereof.

116. For example, one CURTISHILLFORINDIANA.COM Facebook advertisement provides, "Apparently the standard is guilty and who cares if you're innocent…We are living in a time where accusations alone have the power of conviction."

117.    Another CURTISHILLFORINDIANA.COM Facebook advertisement provides, "A key witness confirmed that her accusation contained in the confidential report was materially inaccurate."

118.    Another CURTISHILLFORINDIANA.COM Facebook advertisement provides, "The fundamental lack of fairness and due process regarding this prejudicial investigation is concerning…I have not been contacted by any investigator nor informed of who made these allegations."

119.    Another CURTISHILLFORINDIANA.COM Facebook advertisement provides, "These allegations against me are vicious and false. Don't believe them."

120.    In July 2018, Hill posted the following statement to his official Twitter account: "These allegations against me are vicious and false. At no time did I ever grab or touch anyone inappropriately."

121.    On or around July 11, 2018, Hill also posted a tweet, accusing Ms. DaSilva of coordinating with others to write her account of what occurred at the Sine Die Celebration in March 2018.

122.    Upon information and belief, Hill tweeted, posted, and/or published additional false and defamatory statements about the Plaintiffs.  These tweets have been deleted from Hill's official Twitter account, despite being on notice of the Plaintiffs' claims.

123.    In July 2018, Hill's representatives held a press conference in which they threatened to pursue civil claims for defamation and, among other things, stated, "As we know, sometimes between 1 a.m. and 2 a.m., when alcohol is flowing, perceptions can be different."

124.    After the Plaintiffs' identities became known, Ms. DaSilva was so fearful that Hill would retaliate against her while at work that she locked herself in her office all day, every day,

for over a month. Thereafter, Ms. DaSilva continued to lock herself in her office intermittently because she feared Hill's response to learning she was one (1) of the four (4) women who complained about his conduct at the Sine Die Celebration.

125.    During the summer of 2018, Indiana Senator Sue Glick ("Glick") and Indiana Senator Jean Leising ("Leising") were speaking loudly about the Sine Die Celebration and what had occurred. Several Legislative Assistants heard Leising state to Glick that the Plaintiffs got what they deserved because of how they were dressed at the Sine Die Celebration, or words to that effect.

126.    Leising's statements were reported to both the Democratic and Republican Chiefs of Staff.

127.    On November 7, 2018, the day after the election, the Indiana Senate Democratic Caucus held a meeting. Ms. McLemore attended the meeting as a member of the senior staff. The members of the Democratic Caucus in attendance were Tim Lanane ("Lanane"), Karen Tallian ("Tallian"), Lonnie Randolph ("Randolph"), J.D. Ford ("Ford"), Greg Taylor ("Taylor"), David Niezgodski ("Niezgodski"), Eddie Melton ("Melton"), Mark Stoops ("Stoops"), and Frank Mrvan ("Mrvan").

128.    During the Caucus meeting, members of the staff were asked to leave, including Ms. McLemore. Ms. McLemore waited outside of the meeting room because she needed to speak with Ford, a newly elected Senator, to discuss some communication items.

129.    While waiting, Ms. McLemore overheard Taylor speaking to the Democratic Caucus. Taylor explained to the rest of the Caucus members how he believed the Hill allegations were turning into an exposé on the men at the Sine Die Celebration because the men did not do anything about what Hill was doing to the women on March 15, 2019.

130.     Taylor quoted an article from the IndyStar, which stated "it took a group of brave women, because the men in leadership who were at the Sine Die Celebration, would not step up."

131.     On November 19, 2019, the Indiana General Assembly held its Organization Day, which is the first day of the legislative session. The Attorney General's office typically does not hold an event on Organization Day. However, on November 19, 2019, Hill held an event on safety in the workplace.

132.     In or around December 2018, Ms. Reardon was removed as a member of the Black Caucus. Upon information and belief, this action was taken against Ms. Reardon in retaliation for reporting Hill's unlawful conduct.

133.     On January 24, 2019, the Indiana Senate Democratic Caucus held its Annual Latino Advocacy Day event, which Ms. Lozano attended.

134.     At the Latino Advocacy Day event, Ms. Lozano was standing outside of the Governor's office when Hill came up and stood right beside her for several minutes. Hill stood so close to Ms. Lozano that their arms could have touched. Ms. Lozano felt very uncomfortable and fearful. Ms. Lozano believes that Hill's conduct was intended to physically intimidate her.

135.     On one (1) occasion, Tallian walked up to Ms. DaSilva and put her hand on Ms. DaSilva's shoulder. Tallian asked Ms. DaSilva if it was ok, or if she should ask for permission to put her hand on Ms. DaSilva's shoulder. Tallian then told Ms. DaSilva that if she were gay it would not be sexual harassment.

136.     In the spring of 2019, Ms. Reardon was standing with Bosma, Senator Blake Doriot ("Doriot"), and other lobbyists at a work-related reception. Doriot said, "What are we supposed to do when these women wear a black bra under a white blouse, not look?" Upon hearing Doriot's

statement, Speaker Bosma replied that Senator Doriot should "…never say that again…" Ms. Reardon walked away.

137.    At the close of the legislative session in April 2019, there was no official Sine Die Celebration, "because of what happened last year," a statement made by many in and around the General Assembly. Many lawmakers and staff expressed resentment and disappointment that no Sine Die Celebration was held, and overtly blamed the Plaintiffs.

138.    On April 24, 2019, the day of Sine Die, Ms. McLemore met with Senator Lanane and House member Phil GiaQuinta to discuss a joint press conference. In Ms. McLemore's presence, GiaQuinta said to Lanane, "I know you want to get out of here early so you can make it to AJ's by 9 tonight, right Tim?" Lanane replied, "only if Curtis is going to be there!"

139.    On April 25, 2019, the day after Sine Die, the leaders of each Caucus go on Indiana Lawmakers, a television program, to discuss how the session went. Ms. McLemore was in attendance. Before starting the program, John Schwantes, the host of the show, made a joke about everyone being at AJ's the night before for the Sine Die Celebration and joked about Hill attending. Lawmakers in attendance were Lanane, GiaQuinta, Bosma, and Rodric Bray.

140.    Whenever Ms. Reardon attends an event where Hill is present, Hill's bodyguard, an Indiana State Trooper, stares at Ms. Reardon in a menacing way and engages in similar threatening behavior.

141.    Since reporting Hill's unwelcome and unlawful conduct, all the Plaintiffs have limited their attendance to work-related social events due to the negative, uncomfortable or inappropriate reactions of lawmakers and staff. By not attending such events, the Plaintiffs have been unable to make connections, develop relationships, and network within the political community, all of which are necessary to advance their careers.

*__The Inspector General and Special Prosecutor's Investigations and Reports__*

142.    On July 5, 2018, the Indiana Inspector General ("IG") received a request that the Indiana Office of the Inspector General ("OIG") investigate the allegations against Hill.

143.    OIG Director of Investigations, Darrell Boehmer, led the OIG investigation. OIG also had the Indianapolis Metropolitan Police Department ("IMPD") assist. Sergeant Lawrence Cahill ("Cahill") with the IMPD attended the Plaintiffs' interviews and most of the witness interviews.

144.    On July 24, 2018, the Marion Superior Court appointed Daniel J. Sigler ("Sigler") as a Special Prosecutor In the Matter of Curtis Hill.

145.    The Special Prosecutor was appointed "to determine whether there was probable cause to believe that Curtis Hill, as a private citizen of the State of Indiana, engaged in conduct with the intent to commit a crime."

146.    The Special Prosecutor's investigation was conducted by and with the cooperation of the IMPD and the OIG.

147.    OIG conducted fifty-six (56) interviews, including the Plaintiffs. The OIG also subpoenaed receipts for food, drinks, and transportation for individuals who were with Hill on the evening of March 14, 2018 and the early morning of March 15, 2018.

148.    On July 16, 2018, the OIG interviewed Ms. Lozano.

149.    On July 16, 2018, the OIG interviewed Ms. McLemore.

150.    On July 17, 2018, the OIG interviewed Ms. Reardon.

151.    On July 25, 2018, the OIG interviewed Ms. DaSilva.

152.    Neither the OIG nor the Special Prosecutor interviewed Hill. Instead, Hill submitted a video-recorded statement with one of Hill's attorneys asking him questions. Hill's attorneys then

provided the Special Prosecutor with a copy of the recorded statement. The Special Prosecutor provided the recorded statement to OIG.

153.    The OIG submitted its investigative records to the Special Prosecutor for consideration of criminal charges of felony sexual battery and misdemeanor battery.

154.    On October 22, 2018, the Plaintiffs were contacted by the Inspector General. The Inspector General asked the Plaintiffs to report to the Office of the Inspector General at 9:30 am on October 23, 2018 where they would be given a copy of the Inspector General Report and the Special Prosecutor's Report. The Plaintiffs were also told that the Special Prosecutor was holding a press conference at 10:00 am on October 23, 2018 and then would be available to answer questions after the press conference.

155.    On October 23, 2018, the Plaintiffs met with the Special Prosecutor and the Inspector General. The Special Prosecutor told the Plaintiffs that he believed them, but that he did not want to put them in harm's way and subject them to a "circus environment."

156.    The Inspector General's Report, which consists of twenty-five (25) pages was filed on October 23, 2018 and can be found at https://www.in.gov/ig/files/2018-07-0184%20Attorney%20General%20Wrongdoing_WEB.pdf.

157.    The OIG made several conclusions in the Report, including that:

> …Hill's behavior at the sine die party at AJ's is well documented. Multiple eyewitnesses provided statements that Hill's conduct was inappropriate, creepy, unwelcome, and made many of the women at the party uncomfortable."

158.    The OIG also concluded:

> The women affected indicated Hill's actions caused emotional distress, family distress and anger. At least one woman left the sine die party in tears, others were upset enough to actively avoid any contact with Hill the rest of the night, and still others sought the

protection of men and other women who were there…All but one of the women who alleged Hill inappropriately touched them were in their 20's and new in their careers. ***This demonstrates the disparate power, influence, authority, and age that exists between Hill and the women who made allegations against him.***

[Emphasis supplied].

159.   The OIG further concluded:

None of the women initially intended for the allegations to become public. One of the women said that the breaking point for the women who publicly came forward was when Hill issued his first media release via Twitter, stating that the allegations against him were "vicious and false" and at no time did he "touch or grab anyone inappropriately." Several days thereafter, he reiterated that he was falsely accused.

160.   The Special Prosecutor's Report, which consists of seven (7) pages was filed on October 23, 2018 and can be found at   https://www.documentcloud.org/documents/5017385-SPECIAL-PROSECUTOR-REPORT-CURTIS-HILL.html.

161.   In his Report, the Special Prosecutor explained that his role was to undertake the criminal investigation. He recognized that he was not charged with investigating whether Hill engaged in civil misconducted or employment harassment. The Special Prosecutor likened the investigation to two (2) parallel rails of a railroad track:

In this case, there were two separate, distinct rails: the first rail involved a potential employment harassment and civil misconduct claim. The second rail was the criminal investigation I was asked to undertake. Although these two rails are tied together by a particular set of facts, each rail remains distinct and independent. The facts are the ties that bind these separate legal tracks together. The issues presented by the first rail, i.e. civil liability and the involvement of a public official do not impact on the other rail, i.e. decision to prosecute…

The same facts at issue (i.e. what occurred in A.J.'s on March 15, 2018) apply to both rails but involve an examination of the conduct

of Curtis Hill in different contexts. The first rail involves Curtis Hill, the public figure and office holder, while the second rail examines Curtis Hill's conduct as a private citizen for the purpose of determining whether he violated the criminal law on March 15, 2018...

The first rail thus deals with employee claims of potential inappropriate conduct and sexual harassment against a state official and raise questions as to the appropriateness of the official's conduct in an Indianapolis bar on March 15, 2018. That investigation was not a criminal investigation but a private legal opinion regarding potential employer liability for sexual harassment…

The second rail – the one I was appointed to investigate – deals only with the question of whether a man named Curtis Hill may have violated a criminal statute…

162.   The Special Prosecutor took Plaintiffs' claims as true and credible and noted that:

"Their motives appeared sincere and I found all to be credible in their belief that Hill touched them in a way that was inappropriate."

163.   The Special Prosecutor's Report went on to provide:

"Hill, in his statement, did not deny certain touching occurred but stated that the touching was either incidental to conversation or movement in the crowded bar."

164.   The Special Prosecutor also made several conclusions in his report, notably:

"…there is little public benefit to be served by filing a misdemeanor charge or charges…it would not resolve the issue of main concern: Did Curtis Hill behave inappropriately in the early morning hours of March 15, 2018?"

165.   The Special Prosecutor went on the conclude:

The issues presented on rail one – did an elected official behave in a manner inappropriate to his public office? – remain unresolved and will necessarily be debated in other settings. Mr. Hill is a public official and will have to answer to the public he serves for his involvement and behavior in this matter…

166.   Finally, the Special Prosecutor observed:

> I thank the women affected who have cooperated with this investigation despite having been placed in a position of having their privacy invaded and their credibility questioned. The decision made today should not and does not reflect on their credibility. They addressed their concerns in an appropriate fashion and forum and should be subjected to no criticism.

167.    After the release of the Inspector General's Report, upon information and belief, Hill met with at least one (1) of the witnesses interviewed for the OIG Report to influence the witness to change his story.

### *The Indiana Disciplinary Commission's Complaint Against Curtis T. Hill, Jr.*

168.    On March 19, 2019, the Indiana Supreme Court Disciplinary Commission (the "Commission") filed a Disciplinary Complaint against Hill in the Supreme Court of the State of Indiana, Case No. 19S-DI-00156.

169.    The Commission filed the Disciplinary Complaint against Hill based on his conduct at the March 2018 Sine Die Celebration at AJ's Lounge and specifically Hill's conduct towards the Plaintiffs.

170.    With respect to Ms. Reardon, the Commission alleged in its Disciplinary Complaint that Hill committed the criminal act of battery.

171.    With respect to Ms. McLemore, the Commission alleged in its Disciplinary Complaint that Hill committed the criminal act of battery.

172.    With respect to Ms. Lozano, the Commission alleged in its Disciplinary Complaint that Hill committed the criminal act of battery.

173.    With respect to Ms. DaSilva, the Commission alleged in its Disciplinary Complaint that Hill committed the criminal act of sexual battery, or, in the alternative, criminal battery.

174.    The Commission has alleged that by engaging in this conduct, Hill violated the Indiana Rules of Professional Conduct, Rule Nos. 8.4(b) and 8.4(d), and engaged in "offensive personality" in violation of Rule 22 of the Indiana Rules of Admission and Discipline.

175.    The Commission also cited several aggravating factors bringing the Disciplinary Complaint against Hill.

176.    First, that Hill is the chief legal officer for the State of Indiana and as the elected Attorney General, Hill holds a position of extreme public trust and his office touches virtually all areas of state government. The Commission also noted that Hill has substantial experience in the practice of law including many years as the elected Prosecuting Attorney for Elkhart County.

177.    Next, the Commission stated in the Disciplinary Complaint that when first confronted by legislative leaders about his conduct at the Sine Die Celebration, Hill admitted repeatedly that he had too much to drink or words to that effect. Thereafter, Hill changed his story and claimed that he was not inebriated.

178.    The Commission went on to provide that Hill has held public news events in his role at the Attorney General in which he denounced the allegations as untrue and implied that the Plaintiffs falsified their accounts and later portrayed the Plaintiffs as mistaken or misperceiving his conduct.

179.    Finally, the Commission further stated in its Disciplinary Complaint that Hill's conduct caused actual or potential injury to the Plaintiffs and their future careers by forcing them to choose between reporting his conduct or remaining silent. Three (3) of Hill's four (4) victims were women in their early 20's, had just begun their careers in government, and were subject to the sexual misconduct by a powerful state official.

180.     The Disciplinary Complaint remains pending and a hearing on the matter is scheduled for October 21-25, 2019.

### *Sexual Harassment Policies and Procedures that Apply to Individuals Working In and Around the Indiana General Assembly*

181.     The State of Indiana has no uniform policy regarding sexual harassment that applies to the entire General Assembly or the individuals that work in and around the Statehouse, such as lobbyists and statewide elected officials.

182.     There is currently no sexual harassment policy that prohibits elected officials in Indiana, or other State of Indiana employees, from sexually harassing other elected officials in Indiana.

183.     The House and the Senate each have separate sexual harassment policies that apply to their respective employees.

184.     However, the House policy does not apply to the Senate and the Senate policy does not apply to the House.

185.     In addition, each policy has a separate reporting structure for complaints of sexual harassment.

186.     An employee of the Senate who believes s/he has been sexually harassed by a member of the Senate or employee, supervisor, agent of the Senate, or an individual with whom the employee is required to have contact is required to first report the harassment to the employee's immediate supervisor. If the employee's immediate supervisor is unavailable to receive the report of harassment or is involved in the report of harassment, the report should be made to the Majority Chief of Staff or to the Secretary of the Senate.

187.     An employee of the House who believes s/he has been sexually harassed by a member of the House or staff, immediate supervisor, agent of the House, or an individual with

*DaSilva, Lozano, McLemore and Reardon v. The State of Indiana and Curtis T. Hill, Jr.*

whom the employee is required to have contact, is required to report the incident and names of the individuals involved in the incident to her immediate supervisor, the appropriate Chief of Staff, the appropriate Chief Counsel or the Clerk. The policy goes on to provide, "Alternatively, the employee may directly contact the Equal Employment Opportunity Commission."

188.    Each year, employees of the House and the Senate attend a one (1) hour training, which covers a variety of topics. Approximately five (5) minutes or less of the one (1) hour training is devoted to the subject of sexual harassment. The sexual harassment training typically consists of the person providing the training reading the sexual harassment policy out loud.

189.    In April 2018, legislation was passed that required the Personnel Subcommittee of the Legislative Council to do the following: (1) Prepare recommended sexual harassment prevention policies to govern the conduct of the members of the General Assembly; and (2) Submit the recommended policies to the Legislative Council.

190.    In turn, the Legislative Council was charged with approving the sexual harassment prevention policies no later than November 20, 2018.

191.    In January 2019, for the first time in state history, Indiana passed a sexual harassment policy that applies to elected members of the General Assembly.

192.    However, the policy is deficient in many respects. For example, the policy lacks penalties for elected members of the General Assembly who are in violation, among other deficiencies.  The policy also does not apply to many individuals working in and around the Statehouse and does not provide a mechanism for third party investigations.

193.    Upon information and belief, there have been many claims of sexual harassment reported by Indiana employees and others working in and around the Statehouse over the years.

194.    However, despite the widely acknowledged problem of sexual harassment, discrimination, and retaliation occurring within the Indiana Statehouse, the House and Senate failed to implement adequate policies and procedures to prevent, address, and remediate such unlawful conduct.

195.    It was widely recognized and publicly reported that both the current and prior versions of policies and procedures pertaining to Statehouse employees were inadequate.

196.    For example, on November 15, 2018, it was reported in the Herald Bulletin article "Legislature Developing Sexual Harassment Policy" that State Senator Karen Tallian stated regarding the existing policy, "There wasn't really a plan.  There wasn't a series of who you report to    and    who    is    supposed    to    what    next."    (Available    at https://www.heraldbulletin.com/news/state_news/legislature-developing-sexual-harassment-policy/article_76dde482-309e-50a2-b085-44783a99365e.html).

197.    Senator Tallian was also quoted in the same article that neither the proposed nor current policy in place at the time would prevent or address the sexual harassment committed by Hill.  "That is an independently elected official from the executive branch and would probably not by covered by this.  Although it might tell somebody what it is that they should do and who it is they should go to, or make a complaint to."

198.    In several news articles, other lawmakers, legal commentators, and experts were also reported as finding both the prior policies and procedures as well as the newly enacted revised policies and procedures to be deficient, out of date, and not in compliance with federal law or employment best practices.

### ***Other Relevant Facts***

*DaSilva, Lozano, McLemore and Reardon v. The State of Indiana and Curtis T. Hill, Jr.*

199.    Defendants subjected the Plaintiffs to sexual harassment and failed to take immediate and appropriate action to correct the sexual harassment.

200.    Defendants retaliated against the Plaintiffs for opposing Hill's unlawful sexual harassment.

201.    As a result of Defendants unlawful conduct, Plaintiffs have suffered and continue to suffer emotional distress and anguish.

202.    Defendants' actions were taken with malice or reckless indifference to Plaintiffs' rights.

203.    Defendants' actions were taken under the color of state law.

204.    In particular, Hill's actions on March 15, 2018 and thereafter were taken in the exercise of power possessed by virtue of state law and made possible only because he was clothed with the authority of state law.

## COUNT I – STATE OF INDIANA
### (Title VII – Sexual Harassment)

205.    All preceding paragraphs are incorporated herein by reference.

206.    The State of Indiana engaged in unlawful employment practices by intentionally discriminating against Plaintiffs with respect to terms, conditions, and privileges of employment on the basis of the sex of Ms. DaSilva, Ms. Lozano, and Ms. McLemore.

207.    The State of Indiana's actions interfered with Ms. DaSilva, Ms. Lozano, and Ms. McLemore's work performance and created an intimidating, hostile and offensive work environment, in violation of Title VII.

208.    The State of Indiana did not take any steps to correct the sexual harassment.

209.    As a direct and proximate cause of the State of Indiana's actions to discriminate against Ms. DaSilva, Ms. Lozano, and Ms. McLemore and creation of an intimidating, hostile and

offensive work environment, the State of Indiana has caused Ms. DaSilva, Ms. Lozano, and Ms. McLemore to suffer compensatory damages, including, but not limited to, loss of employment benefits, mental anguish, pain and suffering, humiliation, embarrassment, degradation, loss of reputation, attorney fees and other expenses as allowed by law.

210. The State of Indiana's conduct was willful, in that they knew and/or showed reckless disregard for the matter of whether its conduct, described above, was prohibited by Title VII.

**COUNT II – STATE OF INDIANA**
**(Title VII – Retaliation)**

211. All preceding paragraphs are incorporated herein by reference.

212. By the actions described above, the State of Indiana retaliated against Ms. DaSilva, Ms. Lozano, and Ms. McLemore because they engaged in protected activity.

213. Ms. DaSilva, Ms. Lozano, and Ms. McLemore complained about Hill's inappropriate and unwelcome sexual harassment.

214. Thereafter, the State of Indiana engaged in unlawful employment practices by creating a retaliatory hostile work environment.

215. The State of Indiana engaged in unlawful employment practices by intentionally discriminating against Ms. DaSilva, Ms. Lozano, and Ms. McLemore with respect to the terms, conditions, and privileges of employment, because Ms. DaSilva, Ms. Lozano, and Ms. McLemore raised concerns about discrimination in the workplace and because they reported discrimination and retaliation complaints against the State of Indiana.

216. The State of Indiana's actions interfered with Ms. DaSilva, Ms. Lozano, and Ms. McLemore's work performance and created an intimidating, hostile and offensive work environment.

217.    The State of Indiana's conduct was willful, in that they knew and/or showed reckless disregard for the matter of whether its conduct, described above, was prohibited by Title VII.

218.    As a direct and proximate cause of the State of Indiana's unlawful retaliation, Ms. DaSilva, Ms. Lozano, and Ms. McLemore have suffered and will continue to suffer compensatory damages, including, but not limited to, loss of employment benefits, mental anguish, pain and suffering, humiliation, embarrassment, degradation, loss of reputation, attorneys' fees and costs, and other expenses as allowed by law.

## COUNT III – CURTIS T. HILL JR., INDIVIDUALLY
### (§ 1983 – Sexual Harassment and Discrimination
### in Violation of Equal Protection Clause)

219.    All preceding paragraphs are incorporated herein by reference.

220.    Hill, acting under the color of state law, caused or participated in the deprivation of Ms. DaSilva's, Ms. Lozano's, Ms. McLemore's, and Ms. Reardon's constitutional rights and privileges because of his abuse of authority as Indiana Attorney General.

221.    The result of these unlawful actions has subjected Ms. DaSilva, Ms. Lozano, Ms. McLemore, and Ms. Reardon to a hostile work environment, and discrimination and denial of equal employment opportunities because of their sex, in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

222.    Hill, as Indiana Attorney General and long-time county prosecutor, was sufficiently aware of the longstanding laws that existed prohibiting his conduct against Plaintiffs.

223.    Hill's actions were the direct and proximate cause of the Plaintiffs' damages.

224.    Hill's actions have caused Plaintiffs to suffer compensatory damages, including, but not limited to, loss of employment benefits, emotional pain, mental anguish, loss of reputation, attorneys' fees, and other expenses as allowed by law.

225.    As a direct and proximate result of Hill's malicious and reckless actions in depriving Plaintiffs of their equal protection rights provided by the United States Constitution, in violation of § 1983, Plaintiffs are entitled to punitive damages.

### COUNT IV – CURTIS T. HILL JR., INDIVIDUALLY
#### (§ 1983 – Retaliation in Violation of Equal Protection Clause)

226.    All preceding paragraphs are incorporated herein by reference.

227.    Hill, acting under the color of state law, caused or participated in the deprivation of Ms. DaSilva's, Ms. Lozano's, Ms. McLemore's, and Ms. Reardon's constitutional rights and privileges because of his abuse of authority as Indiana Attorney General.

228.    The result of these unlawful actions has subjected Ms. DaSilva, Ms. Lozano, Ms. McLemore, and Ms. Reardon to a hostile work environment, and discrimination and denial of equal employment opportunities because Plaintiffs raised concerns about discrimination in the workplace and because they reported discrimination and retaliation complaints against Defendants, in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

229.    Hill, as Indiana Attorney General and long-time county prosecutor, was sufficiently aware of the longstanding laws that existed prohibiting his conduct against Plaintiffs.

230.    Hill's actions were the direct and proximate cause of the Plaintiffs' damages.

231.    Hill's actions have caused Plaintiffs to suffer compensatory damages, including, but not limited to, loss of employment benefits, emotional pain, mental anguish, loss of reputation, attorneys' fees, and other expenses as allowed by law.

232.    As a direct and proximate result of Hill's malicious and reckless actions in depriving Plaintiffs of their equal protection rights provided by the United States Constitution, in violation of § 1983, Plaintiffs are entitled to punitive damages.

**COUNT V – CURTIS T. HILL JR., INDIVIDUALLY**
**(§ 1983 – Substantive Due Process Clause)**

233.    All preceding paragraphs are incorporated herein by reference.

234.    Hill, acting under the color of state law, caused or participated in the deprivation of Ms. DaSilva's, Ms. Lozano's, Ms. McLemore's, and Ms. Reardon's constitutional rights and privileges because of his abuse of authority as Indiana Attorney General.

235.    The result of these unlawful actions has deprived Ms. DaSilva, Ms. Lozano, Ms. McLemore, and Ms. Reardon of the right to bodily integrity pursuant to the substantive component of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

236.    Hill's conduct toward Ms. DaSilva, Ms. Lozano, Ms. McLemore, and Ms. Reardon shocks the conscience and evinces a deliberate indifference to the Plaintiffs' rights as individuals.

237.    Ms. DaSilva, Ms. Lozano, Ms. McLemore, and Ms. Reardon suffered unwanted and unwelcome physical contact of a sexual nature that constitutes a violation of the Plaintiffs' liberty interest in their bodily integrity, as provided by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

238.    Hill's ability to commit a serious physical and sexual assault on Ms. DaSilva, Ms. Lozano, Ms. McLemore, and Ms. Reardon was enabled by his governmental position and actions taken as a state official.

239.    Hill, as Indiana Attorney General and long-time county prosecutor, was sufficiently aware of the longstanding laws that existed prohibiting his conduct against Plaintiffs.

240.    Hill's actions were the direct and proximate cause of the Plaintiffs' damages.

241.    Hill's actions have caused Plaintiffs to suffer compensatory damages, including, but not limited to, loss of employment benefits, emotional pain, mental anguish, loss of reputation, attorneys' fees, and other expenses as allowed by law.

242.    As a direct and proximate result of Hill's malicious and reckless actions in depriving Plaintiffs of their equal protection rights provided by the United States Constitution, in violation of 42 U.S.C. § 1983, Plaintiffs are entitled to punitive damages.

### COUNT VI – STATE OF INDIANA
### (§ 1983 – Sexual Harassment and Discrimination in Violation of Equal Protection Clause)

243.    All preceding paragraphs are incorporated herein by reference.

244.    The State of Indiana, acting under the color of state law, caused or participated in the deprivation of Ms. DaSilva's, Ms. Lozano's, Ms. McLemore's, and Ms. Reardon's rights, privileges and immunities under the Equal Protection Clause as secured by the Fourteenth Amendment of the United States Constitution by intentionally discriminating against Plaintiffs with respect to terms, conditions, and privileges of employment on the basis of the sex of Ms. DaSilva, Ms. Lozano, Ms. McLemore, and Ms. Reardon.

245.    The State of Indiana's policy or custom, by its lawmakers, policymakers, and officials, represents the official policy of the State of Indiana, and is responsible for the ongoing harm to the Plaintiffs.

246.    The decisions of the State of Indiana's lawmakers, acts of its policymaking officials, and practices are so widespread and persistent to practically have the force and effect of law.

247.    It is the policy or custom of the State of Indiana to fail to exercise reasonable care in preventing constitutional violations on the basis of equal protection.

248.    As a result of the above-described policies or customs, violations of the constitutional rights to equal protection were not adequately prevented, investigated, sanctioned, or remediated.

249.    The State of Indiana's custom or policy is the moving force behind and demonstrates a deliberate indifference to the Plaintiffs' constitutional rights.

250.    The same problem has arisen many times and the State of Indiana has acquiesced in the outcome causing the deprivation of the Plaintiffs' constitutional rights.

251.    The State of Indiana was sufficiently aware of the longstanding laws that existed prohibiting their conduct against Plaintiffs.

252.    The State of Indiana's actions were the direct and proximate cause of the Plaintiffs' damages.

253.    The State of Indiana's actions have caused Plaintiffs to suffer compensatory damages, including, but not limited to, loss of employment benefits, emotional pain, mental anguish, loss of reputation, attorneys' fees, and other expenses as allowed by law.

254.    As a direct and proximate result of the State of Indiana's malicious and reckless actions in depriving Plaintiffs of their equal protection rights provided by the United States Constitution, in violation of § 1983, Plaintiffs are entitled to punitive damages.

### COUNT VII – STATE OF INDIANA
### (§ 1983 – Retaliation)

255.    All preceding paragraphs are incorporated herein by reference.

256.    The State of Indiana, acting under the color of state law, caused or participated in the deprivation of Ms. DaSilva's, Ms. Lozano's, Ms. McLemore's, and Ms. Reardon's rights, privileges and immunities under the Equal Protection Clause as secured by the Fourteenth Amendment of the United States Constitution by intentionally discriminating against Plaintiffs

with respect to terms, conditions, and privileges of employment, because Plaintiffs raised concerns about discrimination in the workplace and because they reported discrimination and retaliation complaints against the State of Indiana.

257.    The State of Indiana's policy or custom, by its lawmakers, policymakers, and officials, represents the official policy of the State of Indiana, and is responsible for the ongoing harm to the Plaintiffs.

258.    The decisions of the State of Indiana's lawmakers, acts of its policymaking officials, and practices are so widespread and persistent to practically have the force and effect of law.

259.    It is the policy or custom of the State of Indiana to fail to exercise reasonable care in preventing constitutional violations on the basis of equal protection.

260.    As a result of the above-described policies or customs, violations of the constitutional rights to equal protection were not adequately prevent, investigated, sanctioned, or remediated.

261.    The State of Indiana's custom or policy is the moving force behind and demonstrates a deliberate indifference to the Plaintiffs' constitutional rights.

262.    The same problem has arisen many times and the State of Indiana has acquiesced in the outcome causing the deprivation of the Plaintiffs' constitutional rights.

263.    The State of Indiana was sufficiently aware of the longstanding laws that existed prohibiting their conduct against Plaintiffs.

264.    The State of Indiana's actions were the direct and proximate cause of the Plaintiffs' damages.

265.    The State of Indiana's actions have caused Plaintiffs to suffer compensatory damages, including, but not limited to, loss of employment benefits, emotional pain, mental anguish, loss of reputation, attorneys' fees, and other expenses as allowed by law.

266.    As a direct and proximate result of the State of Indiana's malicious and reckless actions in depriving Plaintiffs of their equal protection rights provided by the United States Constitution, in violation of § 1983, Plaintiffs are entitled to punitive damages.

### COUNT VIII – CURTIS T. HILL JR., INDIVIDUALLY
### (Battery)

267.    All preceding paragraphs are incorporated herein by reference.

268.    By the actions described above, Hill touched Ms. DaSilva, Ms. Lozano, Ms. McLemore, and Ms. Reardon in a rude, insolent, and angry manner at the Sine Die Celebration on March 15, 2018, thereby committing battery.

269.    All of the Plaintiffs have suffered pain, humiliation, and mental anguish as a result of Hill's unlawful and unwanted touching.

### COUNT IX – CURTIS T. HILL JR., INDIVIDUALLY
### (Sexual Battery)

270.    All preceding paragraphs are incorporated herein by reference.

271.    By the actions described above, the Plaintiffs did not consent when Hill touched them in a harmful or offensive matter at the Sine Die Celebration on March 15, 2018, thereby committing sexual battery.

272.    All of the Plaintiffs have suffered pain, humiliation, and mental anguish as a result of Hill's unlawful and unwanted touching.

### COUNT X – CURTIS T. HILL JR., INDIVIDUALLY
### (Defamation)

273.    All preceding paragraphs are incorporated herein by reference.

274.     Plaintiffs have the right to be secure in the possession of their good names and reputations.

275.     Hill has repeatedly attacked the Plaintiffs' reputations and good names by falsely stating that Plaintiffs' complaints and reports about his unlawful conduct were, among other things, "vicious and false," "continue to change," are "deeply troubling," and "contain numerous misstatements and misrepresentations."

276.     Hill's statements were published throughout Indiana, across the United States, on television, in newspapers, and on the Internet.

277.     Hill's statements about Plaintiffs are defamatory per se.

278.     As a direct and proximate result of Hill's publication of defamatory statements against Plaintiffs, Plaintiffs' reputations have been harmed and Plaintiffs have sustained damages.

## COUNT XI– CURTIS T. HILL JR., INDIVIDUALLY
### (False Light Invasion of Privacy)

279.     All preceding paragraphs are incorporated herein by reference.

280.     Hill placed the Plaintiffs in a false light before the public by publishing statements that directly or implicitly accused the Plaintiffs of misconduct in their trade, profession, office or occupation.

281.     Hill's published statements that directly or implicitly accused Plaintiffs of misconduct in their trade, profession, office or occupation would be highly offensive to a reasonable person.

282.     Hill had knowledge of or acted in reckless disregard as to the falsity of the published statements that directly or implicitly accused Plaintiffs of misconduct in their trade, profession, office or occupation and the false light in which Plaintiffs would be placed by those statements.

*DaSilva, Lozano, McLemore and Reardon v. The State of Indiana and Curtis T. Hill, Jr.*

283. As a direct and proximate result of Hill's placing Plaintiffs in a false light by publishing statements that directly or implicitly accused Plaintiffs of misconduct in their trade, profession, office or occupation, Plaintiffs have sustained damages.

**WHEREFORE,** Plaintiffs Niki DaSilva, Samantha Lozano, Gabrielle McLemore, and Mara Reardon respectfully request that this Court:

A. Award judgment in favor of Plaintiffs and against Defendants;

B. Enter an order declaring Defendants' conduct unconstitutional;

C. Enter a permanent injunction, upon proper motion, requiring the State of Indiana to adopt appropriate policies related to sexual harassment, retaliation, and protection of individuals' rights to equal protection and substantive due process under the United States Constitution;

D. Require Defendant Hill to retract all defamatory statements and/or apologize for such statements;

E. Award compensatory damages against Defendants in an amount to be determined at trial to make Plaintiffs whole for the mental anguish, emotional distress and other non-pecuniary damages they have suffered because of Defendants' unlawful conduct;

F. Award punitive damages against Defendant Hill to be determined at trial to punish Defendants for the unlawful conduct which was malicious or undertaken with reckless indifference to Plaintiffs' rights and to deter others from similar conduct;

G. Award the costs of maintaining this action, including an award of reasonable attorneys' fees; and

H. Award all other relief proper in the premises.

Dated this 18th day of June 2019.

Respectfully submitted,

*s/Kimberly D. Jeselskis*

William J. Brinkerhoff, Attorney No. 24811-53
Kimberly D. Jeselskis, Attorney No. 23422-49
Hannah Kaufman Joseph, Attorney No. 24974-49
KATZ KORIN CUNNINGHAM PC
334 North Senate Avenue
Indianapolis, Indiana 46204-1708
317-464-1100; 317-464-1111-fax
bbrinkerhoff@kkclegal.com
kjeselskis@kkclegal.com
hjoseph@kkclegal.com

*Counsel for Plaintiffs*

**TRIAL BY JURY**

Plaintiffs Niki DaSilva, Samantha Lozano, Gabrielle McLemore, and Mara Reardon demand a

trial by jury on all issues so triable.

Dated this 18th day of June 2019.

Respectfully submitted,

*s/Kimberly D. Jeselskis*
William J. Brinkerhoff, Attorney No. 24811-53
Kimberly D. Jeselskis, Attorney No. 23422-49
Hannah Kaufman Joseph, Attorney No. 24974-49
KATZ KORIN CUNNINGHAM PC
334 North Senate Avenue
Indianapolis, Indiana 46204-1708
317-464-1100; 317-464-1111-fax
bbrinkerhoff@kkclegal.com
kjeselskis@kkclegal.com
hjoseph@kkclegal.com

*Counsel for Plaintiffs*