# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| NIKI DASILVA, SAMANTHA LOZANO, GABRIELLE MCLEMORE, and MARA REARDON, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF INDIANA and CURTIS T. HILL, JR., individually and in his capacity as the Indiana Attorney General, <br><br> Defendants. | Case No. 1:19-cv-02453-JRS-DLP |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST THE STATE OF INDIANA AND THE ATTORNEY GENERAL IN HIS OFFICIAL CAPACITY

Plaintiffs (employees and an elected official of the legislative branch) have filed a sprawling, eleven-count complaint primarily related to their employment against the State of Indiana and Curtis T. Hill, Jr. (an elected official of the executive branch), notwithstanding that neither the State nor Attorney General Hill is their employer or supervisor. This incongruity should give the Court pause, as it suggests that Plaintiffs have not given proper consideration to whether the fundamental principles of federalism and separation of powers allow their claims to proceed in this Court. In other words, a federal court does not serve as a suitable forum for all grievances. On closer review, Plaintiffs have no route to the relief they seek here, and the only appropriate resolution to their claims is dismissal.

Specifically, the State of Indiana and the Attorney General of Indiana, sued in his official capacity, ask that this Court dismiss Counts I, II, VI, and VII against the State, as well as Counts III through V against the Attorney General, inasmuch as Plaintiffs actually bring claims against him in his official capacity. Depending on the count, dismissal is warranted because the Court lacks subject-matter jurisdiction to hear the claim and/or Plaintiffs fail to state a claim upon which relief can be granted.

While the particular reasons for dismissal are laid out below, it is important at the outset to acknowledge in any case where a state employee sues the State itself that "the constitutional role of the States sets them apart from other employers and defendants." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 477 (1987). As the Supreme Court has frequently recognized, with limited exceptions, "[t]hat a state may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a state without consent given." *In re New York*, 256 U.S. 490, 497 (1921).

The gravity of this principle is so great that Congress has enacted laws with special solicitude for state sovereignty. For example, "when Congress extended Title VII protections to state employees in 1972 it exempted high-level state employees in recognition of the federalism concerns encompassed in their inclusion." *Bd. of Cnty. Comm'rs v. EEOC*, 405 F.3d 840, 848–49 (10th Cir. 2005). When it later sought to

fold in these employees with the Government Employee Rights Act of 1991 (GERA), Congress deliberately designed a different procedural route than is typical for Title VII claims. *See DePriest v. Milligan*, 823 F.3d 1179, 1183 n.3 (8th Cir. 2016) (stating that "[c]laims brought under the GERA follow a different procedural path than most claims under federal discrimination statutes"). Plaintiffs must file a GERA complaint with the EEOC, the EEOC will issue a final order, and plaintiffs may seek appeal of an adverse administrative decision to a federal court of appeals. *See* 42 U.S.C. § 2000e-16c(b)(1), (c); 28 U.S.C. §§ 2342–43.

Accordingly, when state employees bring Title VII claims but should have sought relief under GERA instead, as here, the question of jurisdiction and/or ability to bring Title VII claims at all is a serious matter of constitutional dimensions that should be immediately resolved. *Cf. Will v. Hallock*, 546 U.S. 345, 352 (2006) (explaining that "honoring the separation of powers" and "respecting a State's dignitary interests" are values supporting resolution before trial). So too should the general bar under the Eleventh Amendment to Plaintiffs' § 1983 claims against the State, as well as the prohibition against the State being considered a "person" in the plain language of the statute, be addressed at this early juncture.

Ultimately, while federal jurisdiction may provide a route for relief in some matters of employment discrimination or harassment, this case is not one of them. Rather, this case should be on a one-way road to dismissal.

**STATEMENT OF FACTS FOR PURPOSES OF MOTION TO DISMISS**

It has been the tradition after the end of a legislative session, or Sine Die, for Indiana legislators, legislative staff, and lobbyists to celebrate at AJ's Lounge, a small, neighborhood bar in Indianapolis, Indiana. ECF No. 1 at 5, ¶¶ 38–40. In the early hours of March 15, 2018, after the 2018 legislative session had adjourned, Niki DaSilva, Samantha Lozano, Gabrielle McLemore, and Mara Reardon headed to AJ's Lounge to celebrate Sine Die. *See id.* at 6–9, ¶¶ 41, 57, 70, 77.

Ms. DaSilva has been a Legislative Assistant for the Indiana Senate Republican Caucus since June 6, 2016. *Id.* at 4, ¶¶ 27–28. Ms. Lozano has been a Legislative Assistant for Representatives Reardon, Sue Errington, and Ed DeLaney since January 2018. *Id.* at 5, ¶ 30. Ms. McLemore has been the Communications Director for the Indiana Senate Democrats since May 2018. *Id.* at 5, ¶ 32. Representative Reardon has been a member of the House, representing the 12th District, since 2006. *Id.* at 5, ¶ 33.

Plaintiffs allege that they were surprised to see Indiana Attorney General Curtis T. Hill, Jr. during the late-night/early-morning celebration at AJ's Lounge as he was not an expected attendee. *See id.* at 6–10 and ¶¶ 44–45, 79. Plaintiffs claim that Attorney General Hill made several inappropriate comments and had physical contact with them without their consent. *See id.* at 6–10.

Plaintiffs made their accusations public. *Id.* at 10–11, ¶¶ 91–92. Attorney General Hill defended himself against these accusations through a variety of media, including Twitter, Facebook, websites, and press releases. *See id.* at 12–14. Plaintiffs

4

do not—and cannot—contend that Attorney General Hill is their employer or has supervisory authority over them. Indeed, Ms. McLemore asserts in the complaint that "she had to prepare a press release for Senator Lanane" and that "her role as Communications Director required her to advise *her employer* of the best course of action, which was met with apprehension by *the employer*." *Id.* at 11, ¶¶ 100–101 (emphases added).

Three plaintiffs, Mss. DeSilva, Lozano, and McLemore, filed charges of discrimination under Title VII of the Civil Rights Act of 1964 with the Equal Employment Opportunity Commission (EEOC). *Id.* at 3, ¶¶ 15–17. They did not file a complaint under the GERA. The EEOC terminated its processing of their charges and issued, on request, notices of right to sue. *Id.* at 3, ¶¶ 15–17 and Exhibits 1–3. This lawsuit was initiated on that basis. *See id.*

## STANDARD OF REVIEW

If the Court lacks subject matter jurisdiction, it should dismiss the case under Rule 12(b)(1) of the Federal Rules of Civil Procedure. "When considering a motion to dismiss under Rule 12(b)(1), the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Estate of Eiteljorg ex rel. Eiteljorg v. Eiteljorg*, 813 F. Supp. 2d 1069, 1074 (S.D. Ind. 2011) (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)). As the party invoking the federal court's jurisdiction, it is Plaintiffs' burden to demonstrate that subject-matter jurisdiction exists for the claims raised. *Alonso*

5

*v. Blue Sky Resorts, LLC*, 179 F. Supp. 3d 857, 860 (S.D. Ind. 2016) (citing *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn–Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc)).

A complaint must "state a claim to relief that is plausible on its face" to survive a motion to dismiss under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Two core principles underlie this standard. "First, although the complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012). "Second, the plausibility standard calls for a 'context-specific' inquiry that requires the court 'to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT

Plaintiffs' claims can be organized in two broad categories: Counts I through VII are brought under federal law, and Counts VIII through XI are brought under state (Indiana) law. Specifically, Counts I and II are brought against the State of Indiana under Title VII; Counts III through V are brought against Curtis T. Hill, Jr., individually, under 42 U.S.C. § 1983; Counts VI through VII are brought against the State of Indiana under § 1983; and Counts VIII through XI are brought against Curtis T. Hill, Jr., individually, under state tort law.

This motion only addresses and seeks dismissal of Counts I, II, VI, and VII against the State of Indiana and Counts III through V against the Attorney General to the extent, if any, he is sued in his official capacity. The Court should dismiss all of these claims because the Court lacks subject-matter jurisdiction to hear the claim and/or Plaintiffs fail to state a claim upon which relief can be granted.

Plaintiffs bring Counts I and II against the State under Title VII. But they are not covered by Title VII, so these claims should be dismissed. Counts VI and VII should also be dismissed because Plaintiffs' § 1983 claims against the State are barred by sovereign immunity.

Counts III through V involve muddled claims under § 1983. These three counts at places seem to be brought against Attorney General Hill only in his individual capacity under 42 U.S.C. § 1983, namely when Plaintiffs list the relief sought as damages only, meaning individual capacity only. In other places—specifically in the caption, ECF No. 1 at 1 ("and Curtis T. Hill, Jr., individually and in his capacity as the Indiana Attorney General") and paragraph 10 of the complaint, *id.* at 2, ¶ 10 ("sued in his individual and official capacity")—Plaintiffs appear to bring a suit against Attorney General Hill in his official capacity. But even if Plaintiffs are pursuing official capacity claims under § 1983, those claims should be dismissed because Plaintiffs' requested relief for "Defendant Hill to retract all defamatory statements and/or apologize for such statements," ECF No. 1 at 37, is not a recognized form of injunctive relief.

## I. Plaintiffs Are Not Entitled to Relief Under Title VII

### A. Plaintiffs are not employees under Title VII

Counts I and II of the complaint are sexual harassment and retaliation claims under Title VII of the Civil Rights Act of 1964 against the State of Indiana. But there is an inexorable and fatal flaw in these claims: Plaintiffs are not covered by Title VII. Title VII provides generally that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It further "prohibits employers from retaliating against employees for complaining about discrimination." *Mollet v. City of Greenfield*, No. 18-3685, 2019 WL 2455735, at *2 (7th Cir. June 13, 2019) (citing 42 U.S.C. § 2000e-3(a)).

Congress enacted Title VII, however, with four notable exceptions to the protected class of "employees." Title VII categorically does not apply to "any person elected to public office in any State or political subdivision of any State by the qualified voters thereof." 42 U.S.C. § 2000e(f). Plaintiffs concede this point by omitting Representative Reardon from Counts I and II. *See* ECF No. 1 at 5, ¶ 33. The remaining exceptions are "any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office." 42 U.S.C. § 2000e(f).

8

It is plain from the face of the Complaint that Ms. DaSilva, Lozano, and McLemore belong to one or more of these three categories. Ms. DaSilva has been a Legislative Assistant for the Indiana Senate Republican Caucus since June 6, 2016. ECF No. 1 at 4, ¶¶ 27–28. Ms. Lozano has been a Legislative Assistant for Representatives Reardon, Sue Errington, and Ed DeLaney since January 2018. *Id.* at 5, ¶ 30. Ms. McLemore has been the Communications Director for the Indiana Senate Democrats since May 2018. *Id.* at 5, ¶ 32.

All three Plaintiffs—Ms. Lozano in particular—could be "personal staff" of legislators. Although the Seventh Circuit has not adopted a standard for the personal staff exception, "courts commonly apply a non-exhaustive, six-factor test to determine whether a plaintiff falls within the 'personal staff' exception of Title VII," which looks at the following: "(1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position." *Lockwood v. McMillan*, 237 F. Supp. 3d 840, 857 (S.D. Ind. 2017) (quoting *Teneyuca v. Bexar Cnty.*, 767 F.2d 148, 151–52 (5th Cir. 1985)). Although the details in the complaint are sparse, Legislative Assistants and Communication Directors fit the conventional mold of personal staff, as indicated by these factors.

9

While Plaintiffs may contend that Ms. DaSilva and Ms. McLemore are not personal staff because they work for a larger group of legislators, respectively the Indiana Senate Republican Caucus and the Indiana Senate Democrats, this is where the last two exceptions come into play. A person is "considered an appointee on the policymaking level if the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation." *Id.* at 860 (quoting *Opp v. Office of State's Attorney of Cook Cnty.*, 630 F.3d 616, 619–20 (7th Cir. 2010)). For instance, it seems eminently reasonable that Communications Director McLemore—whose role as a "member of the senior staff" requires "her to advise her employer of the best course of action" with respect to press releases, ECF No. 1 at 11, ¶¶ 100–01 and 15, ¶ 127—is an appointee who provides meaningful input.

Lastly, the "[f]actors relevant to the immediate adviser exemption include: (1) whether the elected official is charged with appointing or terminating individuals in the position; (2) whether the position reports to an intermediary appointee rather than directly to the elected official; and (3) whether the elected official exercises control over the independent judgment of one holding the position." *Kelley v. City of Albuquerque*, 542 F.3d 802, 809 (10th Cir. 2008). Again, Legislative Assistants and Communication Directors are the types of positions who work closely with and are supervised by legislators. Accordingly, each Plaintiff falls outside of Title VII, which means that Counts I and II must be dismissed. *See generally Levitin v. Nw. Cmty.*

*Hosp.*, 923 F.3d 499, 501 (7th Cir. 2019) (describing the question of whether a plaintiff qualifies as an employee under Title VII as a "threshold inquiry").

### B. Plaintiffs are not employees of the State under state law

Plaintiffs also cannot overcome the obstacle that they are not employees of the State under *state law*, which completely undermines any Title VII claims against the State. The Seventh Circuit has explained that courts should employ an "economic realities" test to determine who is an employer, where the most important factor is the putative employer's "right to control." *Frey v. Coleman*, 903 F.3d 671, 676 (7th Cir. 2018).

With respect to Plaintiffs who are legislative employees and an elected official, Indiana law explicitly provides that they are excluded from the State Civil Service System. Ind. Code § 4-15-2.2-1(b)(1) (excluding "[t]he legislative department of state government" from the system). What this means is that Plaintiffs are deliberately situated outside of a system that "deals with, among other things, hiring, dismissal, demotion, reassignment, and suspension of state employees, classification of positions based on the authority, duties, and responsibilities of each position, development of a pay plan, and establishment of performance standards." *Shoemaker v. Ind. State Police Dep't*, 62 N.E.3d 1242, 1247 (Ind. Ct. App. 2016) (citing Ind. Code § 4-15-2.2-1). Put another way, by being excluded from such regulation, Plaintiffs are not controlled by the State.

Without that ability to "control" Plaintiffs, which is set by state law, the State of Indiana is not their employer as a matter of law. Thus, Plaintiffs' Title VII claims

against the State—which need to be addressed to their employer—fail on the additional basis that Plaintiffs targeted an entity that is not their employer.

### C. Plaintiffs failed to proceed under GERA

Congress exempted individuals like Mss. DaSilva, Lozano, and McLemore from relief under Title VII, recognizing significant issues related to federalism. If these plaintiffs do have relief under federal employment law, that relief would need to come through another statute, the Government Employee Rights Act of 1991, 42 U.S.C. § 2000e-16a *et seq.*.[1] Congress enacted GERA to "ameliorate[] the consequences to individuals of falling within [the aforementioned] exemptions" and to "confer[] Title VII rights on those individuals covered by exemptions 2, 3, and 4, but not on the elected official herself." *Kelley*, 542 F.3d at 808 n.4. To seek that relief, however, plaintiffs are required to follow "procedures [that] differ considerably from those ordinarily available under Title VII." *Id.* Specifically, plaintiffs must file a GERA complaint with the EEOC, the EEOC will issue a final order, and plaintiffs may seek appeal of an adverse administrative decision to a federal court of appeals. *See* 42 U.S.C. § 2000e-16c(b)(1), (c); *see also* 28 U.S.C. §§ 2342–43 (providing for jurisdiction by a federal court of appeals). So, instead of providing these categories of employees

---

[1] Neither the Seventh Circuit nor the Supreme Court has resolved the question of whether GERA abrogated state sovereign immunity. When Congress enforces substantive guarantees of § 1 of the Fourteenth Amendment through § 5, the legislation must exhibit "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 365 (2001) (citing *City of Boerne v. Flores,* 521 U.S. 507, 536 (1997)). Congress failed to meet this "congruence and proportionality" requirement properly to abrogate a state's sovereign immunity. *Cf. Alaska v. EEOC*, 564 F.3d 1062, 1066 (9th Cir. 2009).

a right to a jury trial, Congress has mandated administrative-type proceedings, more akin to the type of proceedings provided by the Administrative Procedures Act, 5 U.S.C. § 551 *et seq.* *See* 42 U.S.C. § 2000e-16c(b)–(c).

But Plaintiffs did not follow that procedure in this case. ECF No. 1 at 3, ¶¶ 15–17 and Exhibits 1–3 (declaring that Mss. DaSilva, Lozano, and McLemore filed charges of discrimination with the EEOC, the EEOC terminated its processing of the charges and issued notices of right to sue, and this lawsuit was initiated on that basis). Since "the courts of appeals, rather than the district courts, have exclusive jurisdiction to review final orders from the EEOC on GERA claims," but Plaintiffs improperly filed suit in this Court, Counts I and II must be dismissed as this Court lacks jurisdiction to hear them. *See DePriest v. Milligan*, 823 F.3d 1179, 1183 n.3 (8th Cir. 2016) (collecting cases); *Kelley*, 542 F.3d at 808 n.4; *see also Strong v. Delaware Cnty.*, 976 F. Supp. 2d 1038, 1045–46 (S.D. Ind. 2013).

Dismissal should be with prejudice. *See, e.g.*, *Chism v. N.C. Gen. Assemb.*, No. 5:15-cv-348-FL, 2016 WL 3920211, at *4 (E.D.N.C. July 15, 2016) (recognizing that "[w]hile plaintiff's position is that a GERA claim re-filed with the EEOC will relate back to the date of the initial charge, the status of any re-filed claim with the EEOC is not a matter within the jurisdiction of this court" (internal quotation marks and citation omitted)). And even if Plaintiffs attempt to refile a GERA claim with the EEOC, they are out of luck because any such filing would be untimely. 42 U.S.C. § 2000e-16c(b)(1). Without a doubt, the plaintiffs failed to comply with GERA's

requirements. Accordingly, their claims against the State of Indiana under Title VII should be dismissed.

## II. Plaintiffs' Claims Against the State of Indiana Under § 1983 Are Barred by Sovereign Immunity

Counts VI and VII are brought against the State of Indiana under 42 U.S.C. § 1983. But these claims are barred because of the Eleventh Amendment and because the State of Indiana does not meet the definition of a "person" under § 1983.

The Eleventh Amendment restricts the "Judicial power of the United States" so as not to "extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has understood this to stand for the "presupposition . . . first, that each State is a sovereign entity in our federal system; and second, that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) (internal quotation marks and citations omitted). That is, "federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'" *Id.* (quoting *Hans v. Louisiana,* 134 U.S. 1, 15 (1890)). The State of Indiana has not consented to suit in federal court; consequently, Plaintiffs' claims against the State of Indiana under § 1983 are barred.

Further, the State of Indiana cannot be sued under § 1983 for the additional reason that the State is not a "person" under the plain language of the statute. Section 1983 applies to "[e]very *person* who, under color of any [state] statute . . .

subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added). A state, however, is not a person within the meaning of § 1983. *See, e.g., Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983").

Accordingly, Plaintiffs have failed to assert valid claims under § 1983 against a "person" because the State of Indiana is not a person under § 1983. *Id*. "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that respect." *Will*, 491 U.S. at 66. Thus, states cannot be sued in federal court by private individuals without their consent. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000); *accord Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Indiana has not consented to suit in federal court, and its sovereign immunity has not been abrogated by Congress. Counts VI and VII should be dismissed.

## III. Retaliation Claims Are Not Cognizable Under Equal Protection

Count VII should also be dismissed on the basis that retaliation claims may not be brought under the Equal Protection Clause. *See, e.g., Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004) (acknowledging that "the right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause"). In short, the Equal Protection Clause "does not establish a

15

general right to be free from retaliation." *Grossbaum v. Indianapolis-Marion Cnty. Bldg. Auth.*, 100 F.3d 1287, 1296 n.8 (7th Cir. 1996).

## IV. Any § 1983 Claims Against the Attorney General in His Official Capacity Should Be Dismissed

As noted above, it is not entirely clear whether Plaintiffs even brought claims under Section 1983 against the Attorney General in his official capacity. They suggest in the caption and in paragraph 10 of the complaint that they intend to sue Attorney General Hill in his official capacity. *See* ECF No. 1 at 1 and 2, ¶ 10. But Counts III through V only target Curtis T. Hill, Jr., individually. *Id.* at 29–31. This is reinforced by the fact that, with respect to these counts, Plaintiffs list only damages as the relief sought, which means suing Mr. Hill in his individual capacity only because damages are not available in an official-capacity suit. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Servs.*, 532 U.S. 598, 609 n.10 (2001) (observing that "States and state officers acting in their official capacity are immune from suits for damages in federal court" (citing *Edelman v. Jordan*, 415 U.S. 651 (1974))); *see generally Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (explaining that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity [of which the officer is an agent]").

If Plaintiffs truly intend to sue Curtis T. Hill, Jr. only in his individual capacity, then any mention in their complaint of suing the Attorney General in his official capacity should be stricken. Even if Plaintiffs intended to sue Attorney General Hill in his official capacity, however, their § 1983 claims should still be dismissed because Plaintiffs' requested relief for "Defendant Hill to retract all

16

defamatory statements and/or apologize for such statements," ECF No. 1 at 37, is not a recognized form of injunctive relief. *See, e.g.*, *Kesterson v. Kent State Univ.*, 345 F. Supp. 3d 855, 886 (N.D. Ohio 2018) (acknowledging that "[a]n apology for past wrongdoing is not prospective injunctive relief and is not the type of relief that is cognizable in a § 1983 action against a state official in his official capacity").

The only relief allowed under an official-capacity suit is prospective injunctive relief. *Green v. Mansour*, 474 U.S. 64, 68 (1985) (clarifying that the "Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law" but the Court has "refused to extend the reasoning of *Young*, however, to claims for retrospective relief"). An apology, however, is "an acknowledgment of past wrongdoing . . . , something [federal courts are] without authority to order." *Kesterson*, 345 F. Supp. 3d at 886; *accord Burkes v. Tranquilli*, No. 08-474, 2008 WL 2682606, at *4 (W.D. Pa. July 2, 2008) (asserting that, "[t]o the extent that Plaintiff's requested relief regarding an apology can be construed as a request for injunctive relief against the Defendants, such a claim for injunctive relief fails to state a claim as a matter of law"); *see generally McKee v. Turner*, 491 F.2d 1106, 1107 (9th Cir. 1974) (stating that courts "are not commissioned to run around getting apologies").

## CONCLUSION

Accordingly, Defendants ask that the Court dismiss Counts I, II, VI, and VII against the State of Indiana, along with Counts III through V against the Attorney

General in his official capacity, because the Court lacks subject matter jurisdiction and Plaintiffs failed to state a claim for which relief may be granted.

                                                  Respectfully submitted,

                                                  Curtis T. Hill, Jr.
                                                  Attorney General of Indiana
                                                  Attorney No. 13999-20

By:    Patricia Orloff Erdmann
         Chief Counsel for Litigation
         Attorney No. 17664-49

         Jefferson S. Garn
         Deputy Attorney General
         Attorney No. 29921-49

         Winston Lin
         Deputy Attorney General
         Attorney No. 29997-53

         Parvinder K. Nijjar
         Deputy Attorney General
         Attorney No. 33811-41

         Office of the Indiana Attorney General
         Indiana Government Center South,
         5th Floor
         302 West Washington Street
         Indianapolis, IN 46204-2770
         Phone: (317) 232-6318
         Fax: (317) 232-7979
         Patricia.Erdmann@atg.in.gov