UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NIKI DASILVA, SAMANTHA LOZANO, GABRIELLE MCLEMORE and MARA REARDON, | ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| -vs- | ) | **CASE NO. 1:19-cv-2453  JRS/DLP** |
| | ) | |
| STATE OF INDIANA and CURTIS T. HILL, JR., individually and in his capacity as the Indiana Attorney General, | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

BRIEF IN SUPPORT OF
<u>MOTION TO DISMISS OF CURTIS T. HILL, JR.</u>

### I. INTRODUCTION

This motion is predicated both upon FED.R.CIV.P. 12(b)(1) – want of subject matter jurisdiction – and FED.R.CIV.P. 12(b)(6) – failure to state a claim for relief. Plaintiffs' claims for relief against Attorney General Curtis T. Hill, Jr. – Count III, 42 U.S.C. §1983 – Sexual Harassment and Discrimination in Violation of the Equal Protection Clause; Count IV, 42 U.S.C. §1983 – Retaliation in Violation of Equal Protection Clause and Count V, 42 U.S.C. §1983 – Substantive Due Process Clause – are without any basis.

These counts have failed to plausibly allege claims which invoke the subject matter jurisdiction of the court. Indeed, they also fail in their efforts to allege supplemental state law claims against Mr. Hill such as sexual battery (Count IX), defamation (Count X), and false light invasion of privacy (Count XI). Accordingly, plaintiffs' civil action should be dismissed against Mr. Hill.

## II. THE ALLEGATIONS

Plaintiffs have filed an eleven (11) count, two hundred eighty-two (282) paragraph complaint against defendants, State of Indiana and Mr. Hill. Plaintiff, Mara Reardon, is a member of the Indiana House of Representatives representing the 12th District. (Complaint, ¶33) Plaintiff, Niki DaSilva, is employed as a Legislative Assistant for the Indiana State Senate Republican Caucus. (*Id*., ¶28) Plaintiff, Samantha Lozano, is a Legislative Assistant to Ms. Reardon as well as two other Indiana state legislators (*Id*., ¶30) Plaintiff, Gabrielle McLemore, is currently Communications Director for the Indiana Senate Democrats. (*Id*., ¶32)

On March 15, 2018, plaintiffs attended the customary end-of-the legislative session party called *Sine Die* at an Indianapolis bar, AJ's Lounge. (*Id*., ¶¶37-40) The party took place after midnight. (*Id*.) The party is typically attended by legislators, legislative staff, and lobbyists. (*Id*., ¶38)

Also in attendance was Mr. Hill. (*Id*., ¶43) Plaintiffs alleged that they are unaware of a previous attorney general attending *Sine Die* since, as a member of the Executive Branch of Indiana state government, the Attorney General is not directly involved in the legislative session. (*Id*., ¶¶ 43-45)

Mr. Hill is alleged to have been "rather gregarious." (*Id*., ¶46) He is alleged to have approached Ms. DaSilva "and her group of friends" as they were standing in a line to get a drink at the bar. (*Id*.) He suggested that in order to "get a drink" they had "to show off a little skin." (*Id*., ¶47) Ms. DaSilva asked the friends with whom she was standing in line to confirm that they heard Mr. Hill suggesting that they'd get a drink if they "showed a little skin." (*Id*., ¶¶47-49)

Eventually, several of the women standing in line received their drinks but Ms. DaSilva and Ms. Lozano remained standing at the bar near Mr. Hill. (*Id*., ¶¶50-51) Ms. DaSilva says that Mr. Hill placed his hand on her back, and when she grabbed his hand, he moved both their hands over her buttocks before releasing her hand, all the while conversing with her. (*Id*., ¶¶54-55)

Ms. Lozano alleges that she was talking with Mr. Hill and others while standing in line at the bar when he commented that she was "really hot" and put his hand "around [her] waist" in an effort to pull "her close to him." Ms. DaSilva then stepped between Mr. Hill and Ms. Lozano before he supposedly tried to pull her closer. (*Id*., ¶¶61-69)

Ms. McLemore maintains that while she was standing next to the bar, Mr. Hill sat on a barstool near her and rubbed her back. (*Id*., ¶¶72-75) To stop this, Ms. McLemore asked another bar patron to navigate her away from where Mr. Hill was sitting. (*Id*., ¶¶73-76)

Ms. Reardon alleges Mr. Hill exchanged pleasantries with her and then he placed "his hand on her back and slid his hand down, underneath her dress, reach[ing] to her buttocks and grabbed it." (*Id*., ¶¶79-82) Ms. Reardon maintains that Mr. Hill approached her again later at AJ's Lounge, commented on her skin, and placed his hand on her back a second time. (*Id*., ¶¶84-86)

Several weeks later, in April, 2018, during a meeting with an unnamed legislator, Ms. Reardon alleges she decided to report Mr. Hill's conduct at AJ's Lounge after learning for the first time from her legislative staffer, Ms. Lozano, that Mr. Hill had touched other women at *Sine Die*, including Ms. Lozano herself. (*Id*., ¶¶87-90) Finally, on May 14, 2018, two (2) months after *Sine Die*, Ms. Reardon reported the events of March 15 to "Democratic leadership." (*Id*., ¶91)

An investigation was initiated by "staff lawyers with the General Assembly." (*Id*., ¶¶92-95) The law firm of Taft Stettinius was engaged to perform the investigation. The investigation

3

culminated in the preparation of a memorandum, which was leaked to the press on July 2, 2018. (*Id.*, ¶¶92-98)

Once the purported incident became public, Mr. Hill denied all suggestions of inappropriate conduct. (*Id.*, ¶¶104-123) Investigations have also been performed by both the Indiana Inspector General and a Special Prosecutor appointed by the Marion Superior Court. (*Id.*, ¶¶142-167) No criminal charges have been recommended. (*Id.*)

A complaint is also pending before the Indiana Supreme Court Disciplinary Commission. (*Id.*, ¶¶168-180)

### III. THE APPLICABLE PROCEDURAL RULES

A.   *RULE 12(b)(1) Standard.*

Subject matter jurisdiction here is predicated upon 28 U.S.C. §1331[1] – federal question jurisdiction. The federal claims set out in the complaint supposedly arise from 42 U.S.C. §1983[2] – violation of rights secured by the Constitution and laws of the United States. Supplemental jurisdiction of related state law claims pursuant to 28 U.S.C. §1367(a) is also asserted. [3]

---

[1]   28 U.S.C. §1331 provides:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

[2]   42 U.S.C. §1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[] . . .

[3]   28 U.S.C. §1367(a) provides:

4

Jurisdictional issues must be decided before issues on the merits are decided, *ONI Risk Partners, Inc. v. Donley*, 2019 WL 266591, at *3 (S.D. Ind. Jan. 18, 2019). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *United States v. Rachuy*, 743 F.3d 205, 211 (7th Cir. 2014) (*quoting Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). The absence of subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-507 (2006). It is never waived, "meaning that jurisdictional defects that go unnoticed will imperil any judgment on the merits." *Montgomery v. Markel Int'l Ins. Co. Ltd.*, 259 F.Supp.3d 857, 869-70 (N.D.Ill. May 4, 2017) (*citing Arbaugh*, 546 U.S. at 514). If the court determines at any time that it lacks subject-matter jurisdiction, it must dismiss the action as to those defendants over whom it has no jurisdiction. *See* FED.R.CIV.P. 12(h)(3); *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004).

Motions to dismiss for lack of subject-matter jurisdiction may be based upon a facial challenge to the complaint, to-wit, that the allegations of jurisdiction are insufficient to demonstrate the existence of jurisdiction or upon a factual attack challenging the truth of the jurisdictional facts plaintiff has alleged in the pleading. *Berg v. BCS Financial Corp.*, 372 F.Supp.2d 1080, 1088 (N.D.Ill. 2005). Where, as here, a motion to dismiss under RULE 12(b)(1) contends that the complaint's allegations are facially insufficient to establish jurisdiction, the

---

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

applicable standard mirrors that applied under RULE 12(b)(6). *Zang v. Alliance Fin. Services of Illinois*, 2009 WL 1285531, at *2 (N.D.Ill., May 7, 2009); *see Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir.2001).

B.     *RULE 12(b)(6) Standard.*

A motion made under RULE 12(b)(6) tests the legal sufficiency of the complaint. *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016). The court presumes all well-pleaded allegations to be true, views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from those allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995). But the court is not bound "to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986); and "legal conclusions and conclusory allegations that merely recite the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2007)). As we shall see, the complaint is generously larded with unsupported legal conclusions such as "defendants' actions were taken under color of state law." (Complaint, ¶203) "Hill's actions . . . were taken in the exercise of power possessed by virtue of state law." (*Id.*, at 204) Such legal conclusions are properly disregarded.

While FED.R.CIV.P. 8(a)(2) requires plaintiffs to make "a short and plain statement of the claim showing that the pleader is entitled to relief, "short and plain" does not relieve the pleader of the obligation to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Specific facts must be alleged to sustain allegations that are otherwise conclusory in nature. "Threadbare recitals of the element of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The plaintiffs' allegations "must be enough to raise a right to relief above the speculative level." *Id.*;

*Twombly*, 550 U.S. at 555; *McCauley*, *supra*. As a result, a complaint is defective if it does not

contain sufficient factual matter to "state a claim that is plausible on its face." *Twombly*, 550 U.S.

at 570 (stating that plaintiff must nudge her claims across the line from "conceivable" to

"plausible"); *see Martin v. Wentz*, 214 WL 2511374, *1 (N.D.Ind., June 4, 2014). The "plausibility

standard" asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 555;

*Jeffries v. City of Chicago*, 2010 WL 5313491, at *3 (N.D. Ill. Dec. 17, 2010).

Thus, "[a]fter excising the allegations not entitled to the presumption [of truth]," the court

must determine "whether the remaining factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, *supra*; *McCauley*, 671

F.3d at 615. Making the plausibility determination is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679.

Under *Twombly* and *Iqbal* "the fact that the allegations undergirding a plaintiff's claim could be

true is no longer enough to save it . . . [T]he complaint taken as a whole must establish a non-

negligible probability that the claim is valid, . . ." *Atkins v. City of Chicago*, 631 F.3d 823, 831-32

(7th Cir. 2011). The court must consider all of the features of the complaint "enroute to deciding

whether the complaint has enough substance to warrant putting the defendant to the expense of

discovery." *Id.* As we shall see, the complaint here is devoid of substance so that Mr. Hill should

not be put to the "expense of discovery."

## IV. ARGUMENT

A.    *No §1983 Liability Exists.*

1.    *The After-Hours Acts Attributed to Mr. Hill Did Not Occur "Under Color
      of State Law" and Therefore Cannot Serve as a Basis for §1983 Liability.*

"Section 1983 'is not itself a source of substantive rights' but merely provides 'a method

for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Likewise, §1983 is not intended to "federalize" an otherwise viable state law tort action. *See*, *Katz-Cronk v. Harkett*, 843 F.3d 641 (7th Cir. 2016).

Plaintiffs' claims of constitutional torts fail at the outset because they have not identified a deprivation of a right secured by the Constitution or laws of the United States. Instead, at best, they might have a single claim under Indiana common law. Their efforts to reframe a single state law claim into a violation of the Fourteenth Amendment flunks. And, because the constitutional claims flunk, there is no subject matter jurisdiction. This also dooms from consideration the state law claims arising under supplemental jurisdiction.

Because §1983 is not itself a source of liability, "[i]nstead, it creates a cause of action for the 'deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Narducci v. Moore*, 572 F.3d 313, 318-19 (7th Cir. 2009). In short, §1983 is a vehicle for remedying rights found elsewhere. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 816 (1985). To make a claim for a violation of their civil rights, plaintiffs must allege (1) a deprivation of a federally guaranteed right (2) perpetrated under color of state law. *Burrell v. City of Mattoon*, 378 F.3d 642, 647 (7th Cir. 2004); *Chavez v. Guerrero*, 465 F.Supp.2d 864, 868 (N.D.Ill. 2006) (*citing West v. Atkins*, 487 U.S. 42, 49-50 (1988)).

Thus, for him to be liable, it must be *plausibly* alleged that Mr. Hill acted under color of law, to-wit, that his conduct at AJ's Lounge after midnight on March 15, 2018, was in furtherance of his duties as the Attorney General of the State of Indiana, and not for his personal enjoyment. *Twombly*, 550 U.S. at 570. The "under color of state law" requirement is met only if on March 15, 2018, Mr. Hill acted in an official capacity as a public employee or exercised responsibilities pursuant to state law while at AJ's Lounge. *Chavez*, at 868-69; *see also Gibson v. City of Chicago*, 910 F.2d 1510, 1517 (7th Cir. 1990). Plainly, Mr. Hill cannot have been carrying out any duties

associated with his official state position when the encounters with the plaintiffs occurred at the *Sine Die*. Since he was not acting under color of law, no liability attaches to him under §1983.

A government position is not, by itself, conclusive of whether a defendant acts under color of state law. *See*, *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514-17 (7th Cir. 2007) (dismissing plaintiff's complaint because law enforcement defendants' presence that supposedly caused the plaintiff's stress-induced cardiac death was not under color of state law). Rather, the conduct that constitutes the basis for the complaint must be related to the defendant's state conferred authority. *Chavez* at 868-869; *see also*, *Gibson v. City of Chicago*, *supra*.

"Action is taken under color of state law when it involves a misuse of power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. . . .' As a result, acts by a state officer are not made under color of state law unless they are related in some way to the performance of the duties of the state office." *Honaker v. Smith*, 256 F.3d 477, 484-485 (7th Cir. 2001) (any alleged action by Mayor to cause fire held to not be under color of law). *See also*, *Wilson v. Price*, 624 F.3d 389, 391-94 (7th Cir. 2010) (dismissing complaint because alderman's assault of the plaintiff could not be said to be under color of state law).

Nothing plaintiffs allege taking place at the bar was in any way related to Mr. Hill's performance of his duties as Attorney General. His activities in the crowded bar can hardly be characterized as the "misuse of power" conferred by "state law." They were not in furtherance of any duty, obligation or power he possesses as Indiana Attorney General. If believed, the allegations focus on the activities of a partygoer late at night, which is the type of behavior that occurs in bars after midnight.

2.      *No Equal Protection Violation Has Occurred.*

In Counts III and IV against Mr. Hill, plaintiffs eschew any reliance upon Title VII. Instead, they rely upon the Equal Protection Clause of the Fourteenth Amendment for their claims of discrimination based upon their gender. But an Equal Protection claim for discrimination based upon allegations of sexual harassment is not free-floating. Instead, "such a claim generally follows the contours of a Title VII allegation of sexual harassment," *Trautvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990), whether or not Title VII itself serves as the basis for any relief. Let's not forget that "Title VII is limited to employment discrimination," and as a result any alleged sexual harassment "is actionable only when it affects the plaintiff's condition of employment." *Doe v. Oberweis Dairy*, 456 F.3d 704, 715 (7th Cir. 2006).

Thus, the status of the parties and their relationship has enormous implications for the Equal Protection Clause violation any plaintiff might assert. None of the plaintiffs are protected by Title VII, since they are specifically excluded from the definition of "employee" under the statute. Title VII defines an employee as follows:

> *The term "employee"* means an individual employed by an employer, except that the term "employee" *shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.* The exemption set forth in the preceding sentence shall not include employees subject to civil service laws of a State government, governmental agency or political subdivision. With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States.

29 U.S.C.§630(f) (emphasis supplied).

Thus, at the outset, the plaintiffs face an unsurmountable barrier: they are not Title VII employees. And, they tell us as much: Ms. Reardon identifies herself as an Indiana State Representative. She is by definition a "person elected to public office in any state" and as a result

10

cannot be an "employee" as that term is defined by Title VII. Ms. DaSilva, Ms. Lozano and Ms. McLemore are all properly characterized as "legislative staffers" who are also excluded as employees under Title VII.

Moreover, as regards Attorney General Hill, none of the plaintiffs allege that he is their employer or their supervisor. This is yet another arrow in the heart of their complaint. After all, plaintiffs are all part of the legislative branch of the government of the State of Indiana. By virtue of his office, Attorney General Hill is a member of the Executive Branch.

Under *Bohen v. City of East Chicago, Indiana*, 799 F.2d 1180 (7th Cir. 1986), sexual harassment of female employees by a state employer can constitute an Equal Protection claim. In *Bohen* the Seventh Circuit Court of Appeals looked to *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986) to establish when sexual harassment claims are actionable under the Equal Protection Clause. At the outset, *Bohen* instructs that the sexual harassment must arise out of an employment relationship – it must be "attributable to the employer under §1983." There must be "intentional discrimination" by the employer which results in the creation of "abusive [employment] conditions." *Id.* at 1187. And, to be actionable under the Equal Protection Clause, *Bohen* instructs that the "harassment must be sufficiently *severe* or *pervasive* to alter the conditions of [the plaintiffs] employment [so as to] *create an abusive working environment*." *Id.* at 1186. (Emphasis added). Thus, "*repeated* crude sexual advances," "*sexual assaults*" or the like accompanied by "belittling remarks" all occurring in the workplace, violate the Equal Protection Clause. *Id.*

But plaintiffs have failed to allege any claim of employment-based intentional discrimination. They have not alleged – and cannot allege – that Attorney General Hill is their employer or their supervisor. In fact, they recognize that he is the Attorney General of Indiana and therefore a member of the Executive Branch while they are part of the Legislative Branch.

Plaintiffs and Mr. Hill are thus part of two (2) separate and co-equal branches of Indiana state government. Nor have plaintiffs alleged that Mr. Hill's conduct on March 15, 2018 took place in the workplace. Indeed, his actions took place in a local bar in the wee hours of the morning at a party attended by legislators, their staffers and lobbyists. Nor do they allege that Mr. Hill has somehow taken adverse action against their wages, benefits, or other conditions of their employment or somehow created an abusive workplace. *See*, *McPherson v. City of Waukegan*, 379 F.3d 430, 439-41 (7th Cir. 2004) *Adusumilli v. City of Chicago*, 164 F.3d 353, 363-64 (7th Cir. 1998) (both holding that plaintiffs' sexual discrimination / hostile work environment claim failed for lack of an adverse job action); Ms. Reardon remains a state legislator. Ms. Lozano, Ms. DaSilva and Ms. McLemore remain employed with responsibilities to the Indiana legislature, without any adverse changes to their wages, hours, or conditions of employment. After all, Mr. Hill is *not* their employer and as a result, he has no control over them, their workplace, or their condition of employment.

What the four plaintiffs have alleged is that each experienced separate touchings and some remarks – all fleeting in nature – in front of other revelers at a bar in the middle of the night. These allegations can never satisfy the standard set out in *Meritor Savings Bank*, that the harassment must be so "severe or pervasive so as to alter the conditions of their employment and create an abusive working environment." *Accord*, *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 677-79 (7th Cir. 2005); *McPherson*, 379 F.3d at 434-39; *and Adusumilli*, 164 F.3d at 357-63 (all holding that unwanted sexual / physical touching, gestures and uncouth gender comments did not satisfy the severity standard for finding a "hostile work environment" for purposes of sexual discrimination).

Plaintiffs' retaliation claims in Count IV fare no better. The Seventh Circuit has repeatedly rejected retaliation claims under the Equal Protection Clause. *See*, *e.g.*, *Racicot*, 414 F.3d at 676-79; *Boyd v. Illinois State Police*, 384 F.3d 888, 898 (7th Cir. 2004); *Adusumilli*, 164 F.3d at 361-64.

      3.     *The Sexual Advances Alleged Do Not Constitute a Substantive Due Process Violation Under the Fourteenth Amendment Because They Flunk the "Shock the Conscience Test".*

As to Count V, further analysis reveals that quite apart from the absence of any plausible allegations that Mr. Hill was acting under the color of state law so as to trigger 42 U.S.C. §1983, the complaint otherwise flunks the test for liability under the Due Process Clause of the Fourteenth Amendment. In certain circumstances, the Fourteenth Amendment affords an individual substantive due process which recognizes a cognizable liberty interest in bodily integrity. *Albright v. Oliver*, 510 U.S. at 271; *Wudtke v. Davel*, 128 F.3d 1057, 1062 (7th Cir. 1997); *Twyman v. Burton*, 757 F.Supp.2d 804, 809 (S.D.Ind. 2010).

Everybody knows that "the most familiar office" of the Due Process Clause "is to provide a guarantee of fair procedure in connection with any deprivation of life, liberty or property by a state." *Collins v. City of Harker Heights, Tex*, 503 U.S. 115, 125 (1995). Plaintiffs are not asserting a procedure-based claim here *see*, *e.g.*, *Manley v. Law*, 889 F.3d 885, 891 (7th Cir. 2018) (rejecting procedural due process claim, noting that "emotional well-being" is not a protected Fourteenth Amendment interest),[4] but rather a right to "substantive due process." Those who have studied constitutional law know that the doctrine of "substantive due process" has a checkered past, and,

---

[4]     "As far as we know, no court has gone so far as to say, as the plaintiffs argue, that the United States Constitution requires state and local government officials to avoid upsetting other public officials and candidates by their actions or words." (*Id.*)

at least in the economic sphere, substantive due process has been conclusively rejected as a constitutional standard. Similarly, substantive due process as a basis for vindicating a right to bodily integrity is so ill-defined and susceptible to limitless expansion, that it could serve to reconstitute the courts as veritable super-legislatures. As a result, the Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this uncharted area are scarce and open-ended." *Collins*, 503 U.S. at 125.

As the court has instructed: "Although a §1983 claim has been described as a 'species of tort liability,' . . . it is perfectly clear that not every injury in which a state official has played some part is actionable under the statute." *Martinez v. State of California*, 444 U.S. 277, 285 (1980). The court has further elaborated:

> Because the Due Process Claus does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society, we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law.

*Collins*, 503 U.S. at 129.

The Supreme Court has therefore limited recovery for such violations of "bodily integrity" to only those official actions which "shock the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846-847 (1998). As the court observed in *Lewis*:

> The due process guarantee [of the Fourteenth Amendment] does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm. In *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155,1160-61, 47 L.Ed.2d 405 (1976), for example, we explained that the Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States ... We have accordingly rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and we have held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.

523 U.S. at 848-49.

14

This remains the iron-clad rule: The Due Process Clause authorizes only claims in which bodily integrity is infringed "by a serious, as distinct from a nominal or trivial, battery." *Alexander v. DeAngelo*, 329 F.3d 912, 916 (7th Cir. 2003). As the *Alexander* court noted: "This qualification is important, because any offensive touching (unless consented to, which removes the offense) is a battery, [and] most batteries are too trivial to amount to deprivations of liberty." *Id.* "[O]nly conduct falling towards the more culpable end of the tort law spectrum of liability will be found to shock the conscience." *Id. See also*, *Jackson v. Indian Prairie School District 204*, 653 F.3d 647, 655 (7th Cir. 2011). We emphasize: only "'the most egregious official conduct' shocks the conscience." *Wilson v. Warren*, 830 F.3d 464, 470 (7th Cir. 2016), *quoting Jackson*, 653 F.3d at 654.

Thus, the key to determining a substantive due process claim is whether the offending action "would shock the conscience of federal judges." *Decker v. Tinnel*, 2005 WL 3501705, at *7 (N.D.Ind., Dec. 20, 2005); *Twyman v. Burton*, 757 F.Supp.2d 804, 809 (S.D.Ind. 2010) In the context of an "unconsented to touching," or battery, the right to bodily integrity is infringed only by a serious battery – not a battery that is nominal or trivial. *Twyman*, *supra* (*citing Alexander v DeAngelo*, 329 F.3d at 916) ("Because any offensive touching ... is a battery ... most batteries are too trivial to amount to deprivations of liberty.").

To be sure, serious sexual assault implicates the substantive due process liberty interest in bodily integrity. *See*, *e.g.*, *Wudtke*, 128 F.3d at 1063 (allegation of coercion to perform oral sex stated substantive due process claim); *Alexander*, 329 F.3d at 916 ("rape committed under color of state law is [] actionable under 42 U.S.C.§1983 as a due process violation"). Conversely, conduct significantly more serious than that at issue here has been held *not* to state a substantive due process claim. *See*, *e.g.*, *Decker* (no substantive due process claim where male officer, during

a voluntary ride-along with 18 year-old female, asked her to strip, repeatedly tried to kiss her, forced his hand between her thighs, and groped her breasts); *see also*, *Nagle v. McKernan*, 2007 WL 2903179 (N.D.Ill. 2007) (no substantive due process violation where fire marshal wrote love note and intimately pressed his face against plaintiff and breathed on her neck).

In *Twyman v. Burton*, 757 F.Supp.2d 804 (S.D.Ind. 2010), a female confidential drug informant filed a §1983 action against a police department's undercover detective (Mears), alleging that by subjecting her to "inappropriate sexual acts and harassment" he violated her rights under the Fourteenth Amendment. Specifically, Twyman asserted that Mears violated her substantive due process right of bodily integrity when – following a warrantless search of her home – Mears found a sex toy, took a picture of it (which he apparently displayed to her and others), and "battered her with [the toy] by placing it in her [car] seat knowing she would sit upon it." In granting defendant Mears' motion to dismiss the substantive due process count, Judge Pratt observed:

> Such behavior is unquestionably puerile and repulsive. The harder question, however, is whether such behavior amounts to a constitutional deprivation. After all, 'every official abuse of power, even if unreasonable, unjustified, or outrageous, does not rise to the level of a federal constitutional deprivation. Some such conduct may simply violate state tort law or indeed may be perfectly legal, though unseemly and reprehensible.'

*Twyman*, 757 at 809 (*quoting McCoy v. Harrison*, 341 F.3d 600, 605 (7th Cir. 2003). The court concluded that, although Mears' behavior was juvenile, it did not "shock the conscience" and therefore did not equate with a constitutional deprivation. *Id*.

In determining whether the conduct at issue gives rise to a substantive due process claim, federal courts have ascribed weight to several specific factors, including the *duration* of the offensive behavior, the *nature* of the conduct, and whether *force* was used. *Decker*, 2005 WL 3501705, at \*9. "'*Typically, cases found to shock the judicial conscience deal with repeated*

16

*misconduct by a state actor over time that involves the exercise of force and reaches, or closely approaches, the level of rape*.'" *Robinson v. Leonard-Dent*, 2013 WL 5701067, at *8 (N.D.Ind. Oct. 18, 2013) (*quoting King v. Lienemann*, 2011 WL 833977, at *4 (S.D.Ill. 2004) (emphasis added). The plaintiff in *King*, a prisoner in an Illinois correctional facility, alleged that a prison guard pulled down plaintiff's pants and underwear in front of other prisoners, thus violating his substantive due process rights and causing him "emotional trauma." Dismissing this claim, the court concluded that "a single episode of harassment that amounts at most to a common law battery, does not rise to the level of a substantive due process violation." *Id*.

Here, Mr. Hill's actions do not rise to a level approaching such "conscience-shocking" behavior. The events at AJ's Lounge are plainly not on par with the Hebron police officer's groping of the 18-year-old ride-along, which was found not to constitute a substantive due process violation of her "bodily integrity." in *Decker*. On the contrary, if the plaintiffs' allegations are given credence, the conduct is at worst the type of behavior which can be exhibited by patrons at a crowded bar late at night. The complaint is devoid of allegations of sustained prolonged physical contact or multiple episodes perpetrated on the same plaintiff. There was no force applied, no overt sexual contact, no insults or belittling remarks. Mr. Hill's purported touching of each of the plaintiffs occurred in a single evening in a very public setting. There is no allegation that he engaged in this behavior with any of the plaintiffs at any other time. At worst, the conduct might equate with a common-law tort, but not a constitutional violation.

As discussed above, Mr. Hill did not "act[] under color of state law" (Count V, ¶234) and most certainly did not "abuse [his] authority as Indiana Attorney General". (¶204) His conduct may have been "rude" and "offensive," but it was not "enabled by his governmental position ... as

a state official." (Count V, ¶¶237-238) It flunks the "shocks the conscience" test. There is no "substantive due process violation" and Count V should be dismissed.

Because Count V along with the unfounded Equal Protection claims in Counts III and IV fails to allege any substantial basis for federal question jurisdiction, there is no reason for the court to retain supplemental jurisdiction over the plaintiffs' remaining state law claims against Mr. Hill. 28 U.S.C. §1367(c)(3); *see Sharp Elec. Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 514-515 (7th Cir. 2009); *see also Berry v. Ivy Tech State College*, 2003 WL 1563862, at *2 (S.D.Ind. Jan. 15, 2003).

B.     *Qualified Immunity Applies to Foreclose Liability.*

As we have demonstrated, there is no specifically defined federal civil rights violation here, because there is no cognizable federal civil right involved. Plaintiffs' own allegations demonstrate that Mr. Hill, as an executive branch member, had no prior relationship to plaintiffs, had no employment or supervisory power or authority over them, made no threats to them and committed no violent, egregious or shocking act against them. [DE1, generally] Instead, by plaintiffs' own allegations, at a social party event long after midnight where all supposedly were drinking, Mr. Hill briefly touched two plaintiffs on the back and two plaintiffs on the buttocks. [DE1, generally]

In other words, the conduct alleged is no different than that which might occur in bars anywhere. This is no federal case simply because Mr. Hill was the Indiana Attorney General, and there has been no federal right infringed, least of all any of which he should have known beforehand. *City of Escondido v. Emmons,* 139 S.Ct. 500, 503-04 (2019). By both what they have pled and what they have not pled, plaintiffs have established as a matter of law that Mr. Hill is entitled to qualified immunity as to all claims against him. *Doe v. Purdue,* 2019 WL 2707502 at **8-9. *See also Tierney v. Vahle,* 304 F.3d 734, 739-43 (7th Cir. 2002) (holding that the plaintiffs

pled themselves out of court with regard to conspiracy and that judge's position did not mean that his actions were under "color of law" for purposes of 42 U.S.C. §1983 claims.)

The issue of "qualified immunity" can be decided on the allegations of a complaint alone. The Seventh Circuit did so in the recent case of *Doe v. Purdue Univ.*, No. 17-3565, 2019 WL 2707502 (7th Cir. June 28, 2019) In *Doe*, the court granted a motion to dismiss in favor of individual defendants on the basis of qualified immunity:

> . . . because the defendants have asserted qualified immunity, John can recover damages from them only if his right to receive procedural due process in the disciplinary proceeding was clearly established. *See Rainsberger v. Benner,* 913 F.3d 640, 647 (7th Cir. 2019). . . .
>
> There is no hard-and-fast rule, however, against resolving qualified immunity on the pleadings . . . . That said, the existence of qualified immunity is not always dependent on factual development — it is sometimes clear on the face of the complaint that the constitutional right invoked was not clearly articulated in the case law. In that circumstance, the existence of qualified immunity is a "purely legal question" that the court can address on a motion to dismiss. *Jacobs,* 215 F.3d at 765 n.3.
>
> That is the situation here . . . . Because this is our first case addressing whether university discipline deprives a student of a *liberty* interest, the relevant legal rule was not "clearly established," and a reasonable university officer would not have known at the time of John's proceeding that her actions violated the Fourteenth Amendment. We therefore affirm the dismissal of John's individual capacity claims against Rollock, Sermersheim, Oliver, and Amberger.

*Doe v. Purdue,* 2019 WL 2707502 at **8-9.

And the Supreme Court has just made clear the fact that the constitutional right that is alleged to have been violated must be defined with specificity for purposes of demonstrating that the right had been "clearly established" as of the time of the defendant's alleged conduct:

> Under our cases, the clearly established right must be defined with specificity. This Court has "repeatedly told courts ... not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152, 200 L. Ed. 2d 449 (2018) (internal quotation marks omitted). That is particularly important in excessive force cases, as we have explained:

> "Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue....
>
> "[I]t does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.*, at 1153 (quotation altered).

In this case, the Court of Appeals contravened those settled principles. The Court of Appeals should have asked whether clearly established law prohibited the officers from stopping and taking down a man in these circumstances. Instead, the Court of Appeals defined the clearly established right at a high level of generality by saying only that the "right to be free of excessive force" was clearly established. With the right defined at that high level of generality, the Court of Appeals then denied qualified immunity to the officers and remanded the case for trial. 716 Fed. Appx., at 726.

Under our precedents, the Court of Appeals' formulation of the clearly established right was far too general. The Court of Appeals failed to properly analyze whether clearly established law barred Officer Craig from stopping and taking down Marty Emmons in this manner as Emmons exited the apartment.

*City of Escondido*, at 503-04 (*citing Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). Obviously,

the standard for "a clearly established right" has not been met here.

We believe the legal insufficiency of Counts III, IV and V require dismissal. Qualified

immunity serves as additional reasons to put the 42 U.S.C. §1983 claims out of their misery.

Dismissal of the supplemental state law claims should follow *a fortiori*. Nevertheless, we address

the legal insufficiency of certain of the state law claims should the court feel constrained to rule

upon them as well.

C.      *Dismissal of Count IX – Sexual Battery.*

Count IX of the complaint seeks recovery for "sexual battery." "There is simply no recognized tort action in Indiana for sexual battery or sexual abuse." *Oliver by Hines v. McClung*, 919 F. Supp. 1206, 1219 (N.D. Ind. 1995). "In Indiana sexual battery is not recognized as a specialized tort separate from battery." *Zander v. Orlich*, No. 2:14-CV-400-PRC, 2017 WL 2289349, at *5 (N.D. Ind. May 25, 2017). *See also Lessley v. City of Madison, Ind.*, 654 F. Supp. 2d 877 (S.D. Ind. 2009). As a result, Count IX must be dismissed.

D.      *Dismissal of Count X – Defamation and Count XI – False Light Invasion of Privacy.*

Plaintiffs allege that Mr. Hill defamed them by "repeatedly attack[ing] the plaintiffs' reputations and good names . . ." (Complaint, Count X, ¶ 275) Although they present this claim as being directed to Mr. Hill "individually" plaintiffs further allege that "Hill has used the Office of the Attorney General to threaten, intimidate, and defame the plaintiffs." (Complaint, ¶ 105) The claimed "attacks" consist of Mr. Hill's various denials of plaintiffs' allegations about Mr. Hill's alleged conduct at the March 2018 *Sine Die* celebration. In particular, the plaintiffs identify the following statements by Mr. Hill:

    • "The allegations against me, which continue to change, are vicious and false."

    • "At no time did I ever grab or touch anyone inappropriately."

    • "At least one story has dramatically changed from the document that was the basis for all the calls for resignation."

    • "A key witness confirmed that her accusation contained in the confidential report was materially inaccurate."

    • Plaintiffs' complaints against him are false and he is falsely accused.

    • Plaintiffs' allegations are "materially inaccurate."

21

• Plaintiffs' allegations are "deeply troubling," "viciously false," and "contain numerous misstatements and misrepresentations."

• Mr. Hill is "falsely and publicly accused of abhorrent behavior."

• Plaintiff's accusations have "irretrievably damaged his reputation."

• Ms. Reardon's allegations are "materially inaccurate" and Ms. Reardon confirmed such inaccuracies.

• Plaintiffs' allegations "are vicious and false. Don't believe them."

• Plaintiffs' "allegations against me are vicious and false. At no time did I ever grab or touch anyone inappropriately."

(Complaint, ¶¶ 107-114, 119, 120)

Plaintiffs allege that Mr. Hill's statements about them are defamatory *per se.* (Complaint, ¶277) In Indiana, a communication is defamatory *per se* if it imputes (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct. *Lovings v. Thomas,* 805 N.E.2d 442, 447 (Ind.Ct.App. 2004). Although "[d]amages are presumed even without proof of actual harm to the plaintiff's reputation if the communication is defamatory *per se,*" *Newman v. Jewish Comm. Ctr. Assn. of Indianapolis,* 875 N.E.2d 729, 739 (Ind.Ct.App. 2007), plaintiffs further allege that as a result of Mr. Hill's alleged statements, their "reputations have been harmed and plaintiffs have sustained damages." (Complaint, ¶ 278)

Plaintiffs also allege that Mr. Hill "placed the plaintiffs in a false light before the public by publishing statements that directly or implicitly accused the plaintiffs of misconduct in their trade, profession, office or occupation." (Complaint, Count XI, ¶ 2807/9/2019) The statements at issue are evidently those in paragraphs 107 through 114, 119, and 120 of plaintiffs' complaint, which

statements also form the basis of plaintiffs' *per se* defamation claim. Plaintiffs allege that, through his denials of their claims about his alleged behavior at *Sine Die* celebration, Mr. Hill has not only defamed them, but portrayed them in a false light before the public.

False-light publicity is one of four distinct branches which comprise the tort of invasion of privacy. *Munsell v. Hambright,* 776 N.E.2d 1272, 1282 (Ind. Ct. App. 2002).

The court should dismiss the complaint as to Counts X and XI, the claims for defamation *per se* and false light invasion of privacy. First and foremost, Mr. Hill is entitled to absolute immunity with respect to these claims. It is indisputable that the controversy arising from Mr. Hill's alleged actions at the 2018 *Sine Die* celebration are a "matter of public interest and concern." *See*, *e.g., Connick v. Myers,* 461 U.S. 138, 146-48 (1983); *Love v. Rehfus,* 946 N.E.2d 1, 10 (Ind. 2011). ("Speech is on a matter of public concern if it is addressed to "any matter of political, social, or other concern to the community," as determined by its content, form, and context.") Plaintiffs' allegations establish that the events are a matter of intense public interest.

In *Barr v. Mateo,* 360 U.S. 564 (1959), and its companion case, *Howard v. Lyons*, 360 U.S. 593 (1959), the Supreme Court held that government officials are absolutely immune from liability for defamation based on their statements made in the course of their duties. *Barr*, 360 U.S. at 574; *Lyons*, 360 U.S. at 596. Under *Barr*, the scope of absolute privilege expands with an official's duties and rank. As the court explained with respect to the executive agency head sued in that case, "the occasions upon which the acts of the head of an executive department will be protected by the privilege are . . . far broader than in the case of an officer with less sweeping functions . . . . because the higher the post, the broader the range of responsibilities and duties, and the wider the scope of discretion, it entails." *Id.* at 573. As the elected Attorney General of Indiana, Mr. Hill

heads a large government bureaucracy and is therefore entitled to broad immunity for statements on any matter of public concern.

An immunity defense should be decided at the earliest possible time. "One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Wilson v. Kelkhoff*, 86 F.3d 1438, 1442 n.4 (7th Cir. 1996) (*quoting Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). Because the doctrine grants "immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Indeed, the "driving force" behind the doctrine of immunity is to ensure that claims against government officials will be resolved prior to discovery. *Anderson v. Creighton*, 483 U.S. 635, 640, n. 2 (1987). For this reason, the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227 1991) (per curiam); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The issue of a defendant's immunity from suit should be resolved on a motion to dismiss where an entitlement thereto is clear on the face of the complaint. *See*, *e.g.*, *Heyde v. Pittenger*, 633 F.3d 512, 516-17 (7th Cir. 2011); *Doe v. Purdue Univ.*, 2019 WL 2707502 at *8-9.

Even minor government officials are entitled to absolute immunity for statements made in the course of their activities. In *Scherer v. Morrow*, 401 F.2d 204 (7th Cir. 1968), *cert. denied*, for example, a Secret Service agent had made statements to the effect that a named individual was a "nut" who had possessed "a large collection of dangerous arms, including a 25mm cannon" and was thus among those persons who might pose a danger to the President. *Id.* at 205. The named individual sued the agent for defamation, but the district court granted summary judgment for the defendant. In affirming, the Seventh Circuit held, *citing Barr*, that "[a] federal official cannot be

24

held personally liable for acts committed within the outer perimeter of the official's line of duty." *Id.* Moreover, "[t]o be within that perimeter, and therefore absolutely privileged, 'It is only necessary that the action bear some reasonable relation to and connection with the duties and responsibilities of the official.'" *Scherer*, at 205, *quoting Scherer v. Brennan*, 379 F.2d 509, 611 (7th Cir. 1967).

Many other cases over the years have reiterated this principle. Recently, in *Novoselsky v. Brown*, 822 F.3d 342 (7th Cir. 2016), the court reversed a denial of the defendant's motion for summary judgment in a defamation suit, finding that the defendant was entitled to absolute immunity because the statements at issue had been related to the defendant's official duties. *Id.* at 349. *Novoselsky* arose in the context of a "long and litigious" history in which David Novoselsky, a private attorney, had filed a series of lawsuits against Dorothy Brown, the Cook County, Illinois Circuit Court Clerk, alleging various forms of malfeasance. *Id.* at 346-47. Brown pushed back, denying Novoselsky's allegations and making various public statements in the form of (1) a complaint to the Illinois Attorney Registration and Disciplinary Committee and a press release summarizing the ARDC complaint; (2) oral and written communications to a Novoselsky client, Rev. Jesse Jackson; (3) a letter to the Illinois Better Government Association; and (4) a letter to the Cook County President and Board of Commissioners. *Id.* at 347-48. In all of these communications, Brown denied and disputed Novoselsky's various allegations.

Novoselsky sued Brown for defamation (as well as "retaliation" under 42 U.S.C. §1983), basing his suit on the statements contained in Brown's communications detailed above. *Id.* at 346, 348. The district court denied Brown's summary judgment motion raising several immunity defenses. *Id.* at 346. In reversing, the Seventh Circuit Court of Appeals found dispositive "Brown's argument that she is absolutely immune because her statements were related to her official duties."

*Id.* at 349. As the court went on to explain, "Illinois courts have long held that executive branch officials of state and local governments cannot be civilly liable for statements within the scope of their official duties" *id.* at 349, *citing Geick v. Kay,* 236 Ill.App.3d 868, 603 N.E.2d 121, 127 (1992), and "[t]his immunity covers even defamatory statements." *Id., citing Klug v. Chicago School Reform Bd. of Trustees,* 197 F.3d 853, 861 (7th Cir. 1999). Moreover, this "protection cannot be overcome by demonstrating 'improper motivation or knowledge of the statement's falsity, including malice.'" *Id., citing Klug,* at 861. This is because, as the Supreme Court of Illinois has explained, immunity is "justified by the countervailing policy that officials of government should be free to exercise their duties without fear of potential civil liability." *Id., quoting Blair v. Walker,* 64 Ill.2d 1, 349 N.E.2d 385, 387 (1976).

Citing its previous opinion in *Klug* as well as *Barr,* 360 U.S. at 574, the Seventh Circuit Court of Appeals observed "that the privilege was meant to ensure that 'officials of government' could be free from unwarranted defamation suits." *Id.* at 350, *quoting Klug,* at 861. In this context, "[t]he sole consideration is 'whether the statements made were reasonably related' to the official's duties." *Novoselsky,* at 350, *quoting Geick v. Kay,* 236 Ill.App.3d 868, 603 N.E.2d 121, 127-28 (1992). "Put another way, officials are immune from suit for 'statements made within the scope of their authority.'" *Id., quoting Klug,* at 861. "Depending upon the powers of the office, this scope might broadly include all official duties as well as the 'exercises of discretionary judgment' incident to those duties." *Id., quoting Bair,* 349 N.E.2d at 389. Because all of the statements at issue were within the scope of Brown's duties, absolute immunity barred Novoselsky's defamation claim. *Id.* at 350-51.

The immunities conferred on public officials under Indiana law are at least as broad as those provided by Illinois law. The Indiana Tort Claims Act grants immunity against claims arising

26

from not only "[t]he initiation of a judicial or an administrative proceeding" but also "[t]he performance of a discretionary function," Ind. Code §34-13-3-3(6), (7). The Indiana Supreme Court has determined that "the duty to inform the public can be characterized as a discretionary function and thus would fall within the absolute immunity granted under the Indiana Tort Claims Act." *Foster v. Pearcy,* 270 Ind. 533, 537 (1979), cert. denied, 445 U.S. 960 (1980). As the court explained, "[b]oth the Attorney General of Indiana and the local prosecuting attorneys in this State exercise certain sovereign powers. . . . We therefore conclude that since it is a prosecutor's duty to inform the public as to his investigative, administrative, and prosecutorial activities, the prosecutor must be afforded absolute immunity in carrying out these duties." *Id.* at 537. As this court has recognized, "[p]rosecutorial immunity under Indiana law is even broader than under federal law" such that "[w]hen Indiana prosecutors act reasonably within the general scope of authority granted to them, they receive absolute immunity." *Everling v. Ragains,* 2015 WL 1319707 at *5 (S.D. Ind., March 23, 2015) (quotation marks omitted), *citing Foster,* 387 N.E.2d at 449. Thus, even though the statements at issue in Foster "were clearly not a part of any judicial proceeding, the Indiana Supreme Court still applied absolute immunity." *Id.* at *5.

State officials like the Attorney General are absolutely immune from liability based upon both common law doctrine and the Indiana Tort Claims Act. In *American Dry Cleaning & Laundry v. State,* 725 N.E.2d 96 (Ind.Ct.App. 2000), for example, the Indiana Court of Appeals applied *Foster* to affirm a trial court's dismissal of a defamation suit which arose from published remarks by the Indiana Attorney General that American Dry Cleaning, which the State had sued alleging violations of environmental laws, was a "public enemy." *Id.* at 98. As the court concluded, "because [Attorney General] Carter was acting within the scope of her authority in making statements to the press about a pending case, she was performing a discretionary function, and thus

enjoys absolute immunity under the Indiana Tort Claims Act from liability to ADC." *Id.* at 99. Likewise, in *Sims v. Barnes,* 689 N.E.2d 734 (Ind.Ct.App. 1997), *trans. denied*, the Court of Appeals found that a prosecutor was absolutely immune under both common-law principles and the ITCA for public statements made about a matter being investigated by his office. *Id.* at 736-37. Federal courts in Indiana have reached similar outcomes. *See, e.g., Reeves v. Carter,* 2013 WL 4540635, at *2 (N.D. Ind., Aug. 36, 2013) (dismissing complaint against Lake County Prosecutor on grounds of absolute immunity); *Everling,* 2015 WL 1319707, at *5 (dismissing state-law claims against prosecutor arising from investigation and prosecution of plaintiff for child molestation).

Thus, because plaintiffs' lawsuit seeks damages from Mr. Hill in his official capacity as Attorney General, the suit is barred by the doctrine of prosecutorial immunity. The complaint states that Mr. Hill is "sued in his individual and official capacit[ies]," *Id.* at ¶10. But the Eleventh Amendment bars private parties' suits in federal court against state officials acting in their official capacity unless the state has consented to the filing of such a suit. *Alabama v. Pugh,* 438 U.S. 781, 781-82 (1978); *accord*, *Meadows v. Indiana,* 854 F.2d 1068, 1069 (7th Cir. 1988). Indiana has not waived Eleventh Amendment immunity. *Meadows,* at 1069. To the extent that plaintiffs seek to recover from Mr. Hill in his individual capacity, their claims are precluded by the Indiana Tort Claims Act, Ind. Code §34-13-3-5(c), which requires that any lawsuit filed against a state employee in his personal capacity must allege that the acts complained of were "criminal; . . . clearly outside the scope of the employee's employment; . . . malicious; . . . willful and wanton; or . . . calculated to benefit the employee personally." As the statute further provides, the "complaint must contain a reasonable factual basis supporting the allegations." *Id.* The complaint in this case, lengthy though it is, fails to meet these requirements. A plaintiff's failure to allege the requisite circumstances under the immunity statute provides sufficient grounds to dismiss the

complaint. *Niksich v. Cotton,* 810 N.E.2d 1003, 1006 (Ind. 2004); *accord, Feldhake v. Buss,* 36 N.E.3d 1089, 1093-94 (Ind.Ct.App. 2015).

Finally, plaintiffs suggest that, after they complained about his alleged conduct, Mr. Hill "engaged in unlawful retaliation" against them by "us[ing] the Office of the Attorney General to threaten, intimidate and defame the plaintiffs. (Complaint, ¶¶104-106) Mr. Hill's conduct alleged to constitute "retaliation" consists entirely of the statements attributed to him. (Complaint, ¶¶107-120) We previously discussed that there is no retaliation based on the Equal Protection Clause (IV(A)(2)). As a general rule, to prevail on a retaliation claim, the plaintiff must demonstrate that (1) she engaged in Constitutionally-protected activity; (2) she suffered a deprivation that would likely deter such activity in the future; and (3) the protected activity was at least a motivating factor in the defendant's decision to take retaliatory action. *Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012); *accord, Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009). The conduct alleged by plaintiffs to have triggered unlawful retaliation by Mr. Hill is the complaints about Mr. Hill's conduct with reference to the Democratic leadership and the Speaker of the Indiana House of Representatives. (Complaint, ¶¶87-92) This includes plaintiffs' participation in the investigation by staff for the Legislative Services Agency which culminated in the "Taft Memorandum". (*Id.,* ¶¶93-98)

In this case, however, the core of the alleged retaliatory action is in itself speech – in particular, Mr. Hill's various alleged statements in which he denied or cast doubt upon the plaintiffs' allegations. After all, he's not even alleged to be their employer. For this reason, and as a matter of law, plaintiffs cannot establish that Mr. Hill's alleged "retaliation" constituted a deprivation of their Constitutional rights. "Retaliatory speech" is generally actionable only "in situations of threat, coercion or intimidation that punishment, sanction, or adverse regulatory

action will immediately follow." *Novoselsky,* at 356, *citing Hutchins v. Clarke,* 661 F.3d 947, 956

(7th Cir. 2011). Plaintiffs have alleged nothing of the sort in their complaint, instead making clear

that in response to Mr. Hill's alleged *statements* (and not any additional *conduct*) they "have

limited their attendance to work-related social events due to the negative, uncomfortable or

inappropriate reactions of lawmakers and staff." (*Id.*, ¶141)

While "a public official may also face liability where he retaliated by subjecting an

individual to embarrassment, humiliation, and emotional distress," *Novoselsky,* at 356, the cases

make clear that there is "a high bar" for such liability, "usually limited to the release of 'highly

personal and extremely humiliating details' to the public." *Id., quoting Hutchins,* at 957; *see also*,

*Bloch v. Ribar,* 156 F.3d 673, 679-80. In *Bloch,* to take one such example, the defendant was a

county sheriff who responded to a rape victim's public criticism by holding a press conference at

which he released intimate, humiliating, and previously-undisclosed details of the rape. Id. at 676.

Plaintiffs allege nothing which comes remotely close to meeting this standard.

Where, as here, the conduct alleged to constitute retaliation does not rise to the level of

threat, coercion, intimidation, or profound humiliation, "the First Amendment gives wide berth for

vigorous debate, and especially for statements by public officials." *Novoselsky,* at 356. This is "[a]

public official must be allowed, on occasion, to criticize a private citizen's speech, writing or other

expressive activity and may do so broadly when no threat of sanction is involved." *Id.; accord*,

*Penthouse Int'l, Ltd. v. Meese,* 939 F.2d 1011, 1016 (D.C. Cir. 1991). Where the person to whom

the public official is responding is herself a public official (as in the case of Ms. Caldelaria-

Reardon) or a fellow public employee (as with the other plaintiffs), the leeway accorded the

speaker is correspondingly greater. The "wide berth" afforded officials' speech extends beyond

the narrow technical constraints of their position. "As part of the duties of their office, . . . officials

30

must surely be expected to be free to speak out to criticize practices, even in a condemnatory fashion, that they might not have the statutory or even constitutional authority to regulate." *Id.* at 1015. Indeed, courts have found that "officials may express critical views of members of the public even where those views are false." *Novoselsky,* at 356 (*citing X-Men Security, Inc. v. Pataki,* 196 F.3d 56, 71 (2d Cir. 1999)). Plaintiffs have no cognizable claim for "retaliation" and cannot demonstrate a violation of a clearly established right in this context, either.

## V. CONCLUSION

The Motion to Dismiss directed to Counts III, IV and V should be granted. There is no subject matter jurisdiction because the complaint fails to allege facts sufficient to establish a claim for relief under 42 U.S.C. §1983, and therefore a basis for subject-matter jurisdiction under 28 U.S.C. §1331.

Counts IX, X and XI, the pendent state law claims, are also legally insufficient. They should be dismissed, but without any subject matter jurisdiction, supplemental jurisdiction can be declined, and those counts dismissed, without prejudice.

Respectfully submitted,

EICHHORN & EICHHORN, LLP


BY:  /s/ David C. Jensen
            One of the Attorneys for Defendant,
            Curtis J. Hill, Jr.

David C. Jensen, #4893-45
Robert J. Feldt, #16311-45
Alyssa Stamatakos, #16715-53
John P. Twohy, #19603-53
**EICHHORN & EICHHORN, LLP**
2929 Carlson Drive, Suite 100
P.O. Box 2275
Hammond, Indiana 46323
Telephone: (219) 931-0560

Michael Roth, #18859-49
**EICHHORN & EICHHORN, LLP**
9101 North Wesleyan Road
Suite 401
Indianapolis, IN 46268
Telephone: (317) 228-9670

## <u>CERTIFICATE OF SERVICE</u>

I, David C. Jensen, certify that on the <u>11th</u> day of July 2019, I electronically filed the

foregoing Memorandum in Support of Motion to Dismiss with the Clerk of the Court and counsel

using the  Case Management / Electronic Case Filing (CM / ECF) system maintained by the United

States District Court for the Southern District of Indiana:

       William J. Brinkerhoff
       Kimberly D. Jeselskis
       Hannah Kaufman Joseph
       KATZ KORIN CUNNINGHAM PC
       334 North Senate Avenue
       Indianapolis, Indiana 46204-1708

       Patricia Orloff Erdmann
       Jefferson S. Garn
       Parvinder Kaur Nijjar
       OFFICE OF THE INDIANA ATTORNEY GENERAL
       Indiana Government Center South, 5th Floor
       302 West Washington Street
       Indianapolis, Indiana 46204-2770

                  /s/ David C. Jensen
                    David C. Jensen