UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NIKI DASILVA, SAMANTHA LOZANO, GABRIELLE MCLEMORE, and MARA REARDON, | ) ) ) ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| STATE OF INDIANA and CURTIS T. HILL, JR., individually and in his capacity as the Indiana Attorney General, | ) ) ) ) |
| Defendants. | ) |

1:19-cv-02453-JMS-DLP

## ORDER

In the early hours of March 15, 2018, Plaintiffs Niki DaSilva, Samantha Lozano, Gabrielle McLemore, and Mara Reardon attended a celebration at AJ's Lounge in Indianapolis to mark the end of the legislative session for the Indiana General Assembly (the "Sine Die Celebration"). While there, Plaintiffs each encountered Defendant Attorney General Curtis Hill. Based on Attorney General Hill's conduct at the Sine Die Celebration and afterwards, and on the handling of their complaints relating to that conduct, Plaintiffs initiated this action against Attorney General Hill, in both his individual and official capacities, and Defendant the State of Indiana (the "State"). They allege various constitutional violations, and also set forth state law claims. The Indiana House of Representatives (the "House") and the Indiana Senate (the "Senate") have filed Amended Motions to Intervene Pursuant to Federal Rule of Civil Procedure 24, [Filing No. 56; Filing No. 58], and Defendants have moved to dismiss Plaintiffs' claims under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), [Filing No. 85; Filing No. 91]. Defendants have also filed

Motions to Stay the litigation pending rulings on the Motions to Dismiss. [Filing No. 87; Filing No. 93.] All of these motions are now fully briefed and ripe for the Court's decision.

## I.
### BACKGROUND

The following are the factual allegations set forth in the Amended Complaint – the operative complaint in this case – which the Court must accept as true.

### A. The Parties

Ms. DaSilva has been a Legislative Assistant for the Indiana Senate Republican Caucus since June 2016. [Filing No. 44 at 4.] Ms. Lozano has been a Legislative Assistant since January 2018. [Filing No. 44 at 5.] Ms. McLemore has been the Communications Director for the Indiana Senate Democrats since May 2018. [Filing No. 44 at 5.] Ms. DaSilva, Ms. Lozano, and Ms. McLemore are not elected officials, were not chosen by an elected official to be on an elected official's staff, and are not "appointee[s] on the policy making level or…immediate advisor[s] with respect to the exercise of the constitutional or legal powers of…any political office." [Filing No. 44 at 4-5.] Ms. Reardon is an elected member of the House, representing the 12th District of Indiana. [Filing No. 44 at 5.] She was first elected to the Indiana General Assembly in 2006. [Filing No. 44 at 5.] Attorney General Hill was elected in 2016 as Indiana's Attorney General, took office on January 9, 2017, and currently holds that position. [Filing No. 44 at 5.] He is Indiana's highest law enforcement official. [Filing No. 44 at 5.]

### B. Applicable Sexual Harassment Policies and Procedures

The State does not have a uniform policy regarding sexual harassment that applies to the entire General Assembly or to the individuals that work in and around the Statehouse, such as lobbyists and statewide elected officials. [Filing No. 44 at 26.] There is no sexual harassment policy that prohibits elected officials in Indiana, or other State employees, from sexually harassing

other elected officials in Indiana.  [Filing No. 44 at 27.]  The House and Senate have separate sexual harassment policies that apply to their respective employees only.  [Filing No. 44 at 27.] Each policy provides for how a complaint of sexual harassment should be reported.  [Filing No. 44 at 27.]

> For the Senate:
>
> An employee of the Senate who believes s/he has been sexually harassed by a member of the Senate or employee, supervisor, agent of the Senate, or an individual with whom the employee is required to have contact is required to first report the harassment to the employee's immediate supervisor.  If the employee's immediate supervisor is unavailable to receive the report of harassment or is involved in the report of harassment, the report should be made to the Majority Chief of Staff or to the Secretary of the Senate.

[Filing No. 44 at 27.]

> For the House:
>
> An employee of the House who believes s/he has been sexually harassed by a member of the House or staff, immediate supervisor, agent of the House, or an individual with whom the employee is required to have contact, is required to report the incident and names of the individuals involved in the incident to her immediate supervisor, the appropriate Chief of Staff, the appropriate Chief Counsel or the Clerk.

[Filing No. 44 at 27.]  The House policy goes on to provide, "Alternatively, the employee may directly contact the Equal Employment Opportunity Commission."  [Filing No. 44 at 27.]

Employees of the House and Senate attend a one-hour training session each year, of which five minutes or less are devoted to the subject of sexual harassment and which consists of the person conducting the training reading the sexual harassment policy out loud.  [Filing No. 44 at 27-28.]

In April 2018, legislation was passed requiring the Personnel Subcommittee of the Legislative Council to prepare recommended sexual harassment prevention policies to govern the conduct of members of the General Assembly and submit the recommended policies to the

Legislative Council. [Filing No. 44 at 28.] The Legislative Council was charged with approving the sexual harassment prevention policies no later than November 20, 2018. [Filing No. 44 at 28.]

In January 2019, for the first time in state history, Indiana passed the first sexual harassment policy that applies to elected members of the General Assembly. [Filing No. 44 at 28.] The policy does not contain penalties for elected members of the General Assembly who violate the policy, nor does it apply to many individuals who work in and around the Statehouse, or provide a mechanism for third-party investigations. [Filing No. 44 at 28.] Several news articles reflect the opinion of some that "the prior policies and procedures as well as the newly enacted revised policies and procedures [are] deficient, out of date, and not in compliance with federal law or employment best practices." [Filing No. 44 at 29.]

### C. The Sine Die Celebration

The Indiana General Assembly adjourned its session shortly after midnight on March 15, 2018. [Filing No. 44 at 6.] Typically, after adjournment of a legislative session, members of the House and Senate, legislative staff, and lobbyists go out to celebrate the end of the session. [Filing No. 44 at 6.] Consistent with tradition, in the early morning hours of March 15, 2018 lawmakers, staff, and others engaged in the legislative process gathered at AJ's Lounge for the Sine Die Celebration. [Filing No. 44 at 6.] Ms. DaSilva went to AJ's Lounge with several of her co-workers and, when she arrived, she walked toward the bar to join three of her female colleagues. [Filing No. 44 at 6.] While the group was waiting to be served and chatting, Attorney General Hill approached them. [Filing No. 44 at 6.] Ms. DaSilva was surprised to see Attorney General Hill at AJ's Lounge, since Sine Die is typically a celebration among legislators, staff, and lobbyists. [Filing No. 44 at 6.] Attorney General Hill is not involved in the legislative process, nor is he a

member of the General Assembly, and Plaintiffs and many others did not expect him to attend the Sine Die Celebration. [Filing No. 44 at 6.]

Ms. DaSilva observed that Attorney General Hill "seemed rather gregarious." [Filing No. 44 at 6.] He approached her and her friends, and asked what they were doing standing by the bar. [Filing No. 44 at 6-7.] The group told him that they were waiting to order a drink and Attorney General Hill stated "Ah, come on ladies! You haven't figured out how to get a drink yet? You've got to show a little skin!" [Filing No. 44 at 6.] Ms. DaSilva was stunned by Attorney General Hill's comments, asked her colleagues to confirm what she had just heard, and her colleagues "acknowledged that [he] did indeed tell them to show some skin." [Filing No. 44 at 7.]

Ms. Lozano had gone to AJ's Lounge with her intern and Ms. Reardon. [Filing No. 44 at 8.] When Ms. Lozano approached the bar to order some drinks with her co-workers, Attorney General Hill was at the bar. [Filing No. 44 at 8.] She noticed that Attorney General Hill had a drink in his hand and smelled like alcohol. [Filing No. 44 at 8.] Attorney General Hill asked Ms. Lozano "Do you know who I am?," and Ms. Lozano responded that she knew that he was the Indiana Attorney General and that she attended college with his daughter. [Filing No. 44 at 8.] Ms. Lozano hoped that Attorney General Hill would leave her alone if he knew that she was the same age as his daughter. [Filing No. 44 at 8.] While Ms. Lozano ordered drinks, she commented "it's really hot in here." [Filing No. 44 at 8.] Attorney General Hill responded "Yes, you're really hot." [Filing No. 44 at 8.] Ms. Lozano found Attorney General Hill's comment disturbing and inappropriate. [Filing No. 44 at 8.] Attorney General Hill then grabbed Ms. Lozano around the waist and pulled her close to him. [Filing No. 44 at 8.]

Ms. DaSilva then moved around the corner of the bar to put some distance between herself and Attorney General Hill but, when two of her friends received their drinks and left the bar area,

Ms. DaSilva and Ms. Lozano were left at the bar with Attorney General Hill. [Filing No. 44 at 7.] Ms. DaSilva was going to leave, but saw Ms. Lozano's eyes widen, signaling Ms. DaSilva to come closer. [Filing No. 44 at 7.] When Ms. DaSilva did so, Ms. Lozano whispered "please don't leave me alone with him. He's being really weird." [Filing No. 44 at 7.] Ms. DaSilva then positioned herself between Ms. Lozano and Attorney General Hill to act as a buffer and prevent further contact between the two. [Filing No. 44 at 7.]

Shortly thereafter, Attorney General Hill put his hand on Ms. DaSilva's back, and Ms. DaSilva was surprised by his gesture. [Filing No. 44 at 7.] She felt his hand start to slide slowly down her back, and she tried to push his hand away. [Filing No. 44 at 7.] When their hands met, instead of taking her nudge as a cue to remove his hand from her lower back, Attorney General Hill grabbed Ms. DaSilva's hand at her wrist and moved both of their hands over her buttocks, lingering there before eventually releasing her hand. [Filing No. 44 at 7.] Attorney General Hill grinned at Ms. DaSilva and continued the conversation. [Filing No. 44 at 7.] Ms. DaSilva "made it clear to [Attorney General] Hill that his unlawful acts were not consensual and were unwelcome." [Filing No. 44 at 7.] Ms. DaSilva and Ms. Lozano then found an escape route and moved away from the area to avoid Attorney General Hill. [Filing No. 44 at 7.]

Ms. McLemore had also gone to AJ's Lounge for the Sine Die Celebration with several co-workers. [Filing No. 44 at 9.] During the gathering, Attorney General Hill approached Ms. McLemore, who was leaning up against the bar, and he said, "Do you know who I am?" as he pulled up a stool and sat next to Ms. McLemore. [Filing No. 44 at 9.] Attorney General Hill then "cornered and trapped" Ms. McLemore and began rubbing her back without her consent, using his entire hand to rub up and down her back for a period of time. [Filing No. 44 at 9.] Ms. McLemore

mouthed "help me" to her intern, who helped Ms. McLemore get away from Attorney General Hill. [Filing No. 44 at 9.]

Ms. Reardon had also gone to AJ's Lounge for the Sine Die Celebration, and encountered Attorney General Hill shortly after arriving. [Filing No. 44 at 9.] She was surprised to see him there, because in her twelve years in and around the General Assembly she had never seen another Attorney General attend a Sine Die Celebration. [Filing No. 44 at 9.] As Ms. Reardon and Attorney General Hill exchanged pleasantries, Attorney General Hill "leaned toward Ms. Reardon, placed his hand on her back and slid his hand down, underneath her dress, reached to her buttocks and grabbed it." [Filing No. 44 at 10.] Ms. Reardon said, "back off," telling Attorney General Hill that his actions were unwelcome and not consensual, and walked away. [Filing No. 44 at 10.] Ms. Lozano observed the encounter, and was shocked by what she witnessed. [Filing No. 44 at 10.] Later that evening, Ms. Reardon was standing with a group of people when Attorney General Hill came up behind her, put his hand on her back, and said, "That skin. That back." [Filing No. 44 at 10.] Ms. Reardon recoiled before Attorney General Hill could touch her buttocks again, despite his efforts to do so. [Filing No. 44 at 10.]

**D. Plaintiffs' Complaints About Attorney General Hill's Conduct at the Sine Die Celebration**

In April 2018, a few weeks after the Sine Die Celebration, Ms. Reardon had lunch with Ms. Lozano. [Filing No. 44 at 10.] Ms. Reardon learned from Ms. Lozano that Attorney General Hill's unlawful conduct toward Ms. Reardon was not an isolated event when Ms. Lozano told her that Attorney General Hill targeted several other women at the event including Ms. Lozano. [Filing No. 44 at 10.] Ms. Reardon then believed that she had an obligation to report Attorney General Hill's unlawful conduct to House leadership. [Filing No. 44 at 11.]

On May 14, 2018, Ms. Reardon went to the Democratic leadership to report the incidents. [Filing No. 44 at 11.] After that, Ms. Reardon and Ms. Lozano went together to meet with the Speaker of the House, Brian Bosma, where Ms. Reardon reported Attorney General Hill's unlawful conduct at the Sine Die Celebration. [Filing No. 44 at 11.] Subsequently, staff attorneys with the General Assembly interviewed at least six women, but they did not interview Ms. Reardon or Attorney General Hill. [Filing No. 44 at 11.] The law firm representing the Legislative Services Agency then prepared a June 18, 2018 memorandum analyzing the allegations (the "Taft Memo"). [Filing No. 44 at 11.] When the Taft Memo was leaked to the press on July 2, 2019, Attorney General Hill told his staff that he was not at AJ's Lounge on the night of the Sine Die Celebration. [Filing No. 44 at 11.]

Before she became known as one of the accusers, and in her role as Communications Director, Ms. McLemore had to prepare a press release for a Senator regarding her allegations and answer questions received from the media. [Filing No. 44 at 11.] This, along with the fact that her role required her to advise her employer of the best course of action, placed Ms. McLemore in an awkward and inappropriate position. [Filing No. 44 at 12.]

After she came forward to complain, Speaker Bosma told Ms. Lozano that the House could not do anything to Attorney General Hill, that Speaker Bosma was happy that Ms. Lozano had come forward, that Attorney General Hill was asked not to attend functions, but that "it's a free country and [the House] can't stop him." [Filing No. 44 at 12.]

### E. Retaliation Against Plaintiffs

In July 2018, Attorney General Hill issued a written statement on www.CURTISHILLFORINDIANA.com, where he stated:

- "The allegations against me, which continue to change, are vicious and false";

8

- "At no time did I ever grab or touch anyone inappropriately";

- "At least one story has dramatically changed from the document that was the basis for all the calls for resignation"; and

- "A key witness confirmed that her accusation contained in the confidential report was materially inaccurate."

[Filing No. 44 at 13.]  Then, during a July 7, 2018 press conference, Attorney General Hill made

numerous statements to the public that the complaints made against him are false and that he is

falsely accused.  [Filing No. 44 at 13.]

Throughout July and August 2018, campaign funds were used to purchase advertisements

on the "Curtis Hill for Indiana" Facebook page which questioned the credibility, fairness, and

accuracy of Plaintiffs' reports and the investigations of those reports.  [Filing No. 44 at 13.]  These

advertisements claimed:

- "Apparently the standard is guilty and who cares if you're innocent….  We are living in a time where accusations alone have the power of conviction";

- "A key witness confirmed that her accusation contained in the confidential report was materially inaccurate";

- "The fundamental lack of fairness and due process regarding this prejudicial investigation is concerning….  I have not been contacted by any investigator nor informed of who made these allegations"; and

- "These allegations against me are vicious and false.  Don't believe them."

[Filing No. 44 at 14.]  Attorney General Hill also tweeted, posted, and/or published other false and

defamatory statements about Plaintiffs.  [Filing No. 44 at 14.]  In July 2018, Attorney General

Hill's representatives held a press conference in which they threatened to pursue civil claims for

defamation and stated, "As we know, sometimes between 1 a.m. and 2 a.m., when alcohol is

flowing, perceptions can be different."  [Filing No. 44 at 15.]

After Plaintiffs' identities became known, Ms. DaSilva was so fearful that Attorney General Hill would retaliate against her at work that she locked herself in her office because she feared how he would respond once he learned she was one of the four women complaining about his conduct at the Sine Die Celebration. [Filing No. 44 at 15.] During the summer of 2018, legislative assistants overheard two senators talking and one said that Plaintiffs got what they deserved because of how they were dressed at the Sine Die Celebration. [Filing No. 44 at 15.]

On November 7, 2018, the day after the election, the Indiana Senate Democratic Caucus held a meeting. [Filing No. 44 at 15.] Ms. McLemore attended the meeting as a member of the senior staff and, after leaving the meeting and while waiting outside to talk to a newly elected senator, Ms. McLemore overheard a senator tell the Democratic Caucus that he believed that the allegations against Attorney General Hill "were turning into an expose on the men at the Sine Die Celebration because the men did not do anything about what Hill was doing to the women [at the Celebration]." [Filing No. 44 at 15-16.]

In December 2018, Ms. Reardon was removed as a member of the Black Caucus, which she believes was in retaliation for reporting Attorney General Hill's unlawful conduct. [Filing No. 44 at 16.]

On January 24, 2019, Ms. Lozano attended the Indiana Senate Democratic Caucus' Annual Latino Advocacy Day event. [Filing No. 44 at 16.] At the event, Ms. Lozano was standing outside of the Governor's office when Attorney General Hill came up and stood right beside Ms. Lozano for several minutes. [Filing No. 44 at 16.] Attorney General Hill stood so close to Ms. Lozano that their arms could have touched, and Ms. Lozano felt uncomfortable and fearful, and believed that Attorney General Hill was trying to physically intimidate her. [Filing No. 44 at 16.]

On one occasion, a female senator walked up to Ms. DaSilva and put her hand on Ms. DaSilva's shoulder and asked Ms. DaSilva if it was okay or if she should ask for permission to put her hand on Ms. DaSilva's shoulder. [Filing No. 44 at 17.] The female senator then told Ms. DaSilva that if she were gay, it would not be sexual harassment. [Filing No. 44 at 17.]

In the Spring of 2019, Ms. Reardon was standing with Speaker Bosma, a senator, and other lobbyists at a work-related event when the senator said, "What are we supposed to do when these women wear a black bra under a white blouse, not look?" [Filing No. 44 at 17.] Speaker Bosma replied, "never say that again," and Ms. Reardon walked away. [Filing No. 44 at 17.]

At the close of the legislative session in April 2019, there was no official Sine Die Celebration "because of what happened last year," and many lawmakers and staff expressed resentment and disappointment that the celebration was not being held and blamed Plaintiffs. [Filing No. 44 at 17.] On April 24, 2019, the day of Sine Die, Ms. McLemore was meeting with a senator and a House member when, in her presence, the House member said to the senator, "I know you want to get out of here early so you can make it to AJ's by 9 tonight, right…?" [Filing No. 44 at 17.] The senator replied, "only if [Attorney General Hill] is going to be there!" [Filing No. 44 at 17.] The next day, Ms. McLemore was in attendance at the filming of "Indiana Lawmakers," a television program, when the host of the show joked to the leaders of the Caucus that were there about everyone going to AJ's Lounge the night before for the Sine Die Celebration and Attorney General Hill being there. [Filing No. 44 at 17.]

Whenever Ms. Reardon attends an event where Attorney General Hill is present, his bodyguard stares at Ms. Reardon "in a menacing way and engages in similar threatening behavior." [Filing No. 44 at 18.] In late Spring 2019, Ms. Lozano reported to Graham Fishell, the Chief of Staff for the House Democratic Caucus, that she had been subjected to unwelcome and

inappropriate advances by a male member of the House during the Spring of 2019. [Filing No. 44 at 18.]

On June 28, 2019, the Chief of Staff for the Republican Party, Jeff Papa – who is an attorney – asked to speak with Ms. McLemore in the hallway. [Filing No. 44 at 18.] Mr. Papa suggested they go into an office and, when they walked in, the Chief Legal Counsel of the Senate Republicans, Jennifer Mertz – who is also an attorney – was sitting at a conference table with a note pad. [Filing No. 44 at 18.] Mr. Papa asked Ms. McLemore if he could speak to her about the claims in this lawsuit, but she told him and Ms. Mertz that she could not talk about the case without her attorney present, and Mr. Papa told her that she did not need an attorney. [Filing No. 44 at 18.] After Ms. McLemore repeated that she could not speak about the case without her attorney and Mr. Papa again told her that she did not need an attorney, Ms. McLemore felt she had no choice but to speak to Mr. Papa and Ms. Mertz. [Filing No. 44 at 18.] Mr. Papa and Ms. Mertz then questioned her about the allegations, and Ms. McLemore felt "extremely intimidated." [Filing No. 44 at 18-19.]

Later on June 28, 2019, Mr. Papa and Ms. Mertz went into Ms. DaSilva's office unannounced, and asked Ms. DaSilva if they could speak to her about the allegations in this lawsuit. [Filing No. 44 at 19.] Ms. DaSilva asked if she could speak with her attorneys first, and they insisted that the discussion had nothing to do with the lawsuit and she could talk to them. [Filing No. 44 at 19.] Ms. DaSilva continued to state that she was uncomfortable talking to them without speaking to her attorneys, and they finally agreed that she could follow up with them the following Monday and left her office. [Filing No. 44 at 19.] The following Monday, Ms. DaSilva emailed Mr. Papa and Ms. Mertz and told them that she did not want to discuss the lawsuit with them. [Filing No. 44 at 19.]

Also that following Monday, July 1, 2019, as Ms. Lozano walked into her office she was stopped by Mr. Fishell, Alexus Tucker (Director of Legislative Affairs), and Noelle Sykes (Chief Counsel for the Indiana House Republicans, and an attorney), who asked Ms. Lozano if she had a few minutes to talk. [Filing No. 44 at 19-20.] They asked Ms. Lozano about certain allegations in the lawsuit, and Ms. Lozano stated that she did not feel comfortable talking to them without her attorneys. [Filing No. 44 at 20.]

On July 19, 2019, Ms. McLemore attended the Indiana Black Expo Luncheon and, while looking for her table, noticed that some people who were already seated at a table were pointing at her. [Filing No. 44 at 20.] Everyone at the table then turned their heads and looked at her, including Attorney General Hill and his staff member. [Filing No. 44 at 20.]

Since reporting Attorney General Hill's conduct, Plaintiffs have limited their attendance at work-related social events "due to the negative, uncomfortable or inappropriate reactions of lawmakers and staff," and accordingly have "been unable to make connections, develop relationships, and network within the political community, all of which are necessary to advance their careers." [Filing No. 44 at 20.]

### F. Investigation and Reports by the Inspector General and Special Prosecutor

Both the Indiana Office of the Inspector General ("OIG") and a Special Prosecutor appointed by the Marion Superior Court investigated Plaintiffs' allegations against Attorney General Hill. [Filing No. 44 at 20-21.] The Special Prosecutor's investigation was conducted by and with the cooperation of the OIG and the Indianapolis Metropolitan Police Department ("IMPD"). [Filing No. 44 at 20.] The OIG conducted fifty-six interviews, including interviewing Plaintiffs. [Filing No. 44 at 21.] Attorney General Hill was not interviewed, but he submitted a video-recorded statement with one of his attorneys asking him questions. [Filing No. 44 at 21.]

The OIG submitted its investigative records to the Special Prosecutor for consideration of criminal charges of felony sexual battery and misdemeanor battery. [Filing No. 44 at 21.] The Special Prosecutor concluded:

> [T]here is little public benefit to be served by filing a misdemeanor charge or charges…it would not resolve the issue of main concern: Did Curtis Hill behave inappropriately in the early morning hours of March 15, 2018?... I thank the women affected who have cooperated with this investigation despite having been placed in a position of having their privacy invaded and their credibility questioned. The decision made today should not and does not reflect on their credibility. They addressed their concerns in an appropriate fashion and forum and should be subjected to no criticism.

[Filing No. 44 at 24.] After the release of the OIG Report, Attorney General Hill met with at least one of the witnesses interviewed for the OIG Report to influence that witness to change his story. [Filing No. 44 at 24.]

### G. The Indiana Disciplinary Commission Complaint Against Attorney General Hill

On March 19, 2019, the Indiana Supreme Court Disciplinary Commission (the "Commission") filed a Disciplinary Complaint against Attorney General Hill based on his conduct toward Plaintiffs at the Sine Die Celebration. [Filing No. 44 at 25.] As to Ms. Reardon, Ms. McLemore, and Ms. Lozano, the Commission alleged that Attorney General Hill committed criminal battery. [Filing No. 44 at 25.] As to Ms. DaSilva, the Commission alleged that Attorney General Hill committed criminal sexual battery or, in the alternative, criminal battery. [Filing No. 44 at 25.]

### H. The Lawsuit

Plaintiffs initiated this litigation in June 2019, [Filing No. 1], and filed the operative Amended Complaint on August 15, 2019, [Filing No. 44]. Plaintiffs[1] assert the following claims:

---

[1] Counts I and II are asserted on behalf of Ms. DaSilva, Ms. Lozano, and Ms. McLemore, but not Ms. Reardon. [Filing No. 44 at 30-32.] All other counts are asserted on behalf of all Plaintiffs.

(1) sexual harassment under Title VII against the State (Count I); (2) retaliation under Title VII against the State (Count II)[2]; (3) sexual harassment and discrimination in violation of 28 U.S.C. § 1983 and the Equal Protection Clause against Attorney General Hill in his individual and official capacities (Count III); (4) retaliation in violation of 28 U.S.C. § 1983 and the Equal Protection Clause against Attorney General Hill in his individual and official capacities (Count IV); (5) violation of 28 U.S.C. § 1983 and the Substantive Due Process Clause against Attorney General Hill in his individual and official capacities (Count V); (6) battery against Attorney General Hill in his individual capacity (Count VI); (7) sexual battery against Attorney General Hill in his individual capacity (Count VII); (8) defamation against Attorney General Hill in his individual capacity (Count VIII[3]); and (9) false light invasion of privacy against Attorney General Hill in his individual capacity (Count IX).

## II.
## MOTIONS TO DISMISS

### A. Standard of Review

"Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a claim for lack of subject matter jurisdiction." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When deciding a motion to dismiss under Rule 12(b)(1), the Court accepts the allegations in the plaintiff's complaint as true and draws all reasonable inferences in the plaintiff's favor. *Long v. Sharebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The burden is on the plaintiff to prove, by a preponderance of the evidence, that subject-matter

---

[2] Ms. DaSilva, Ms. Lozano, and Ms. McLemore all timely filed Charges of Discrimination ("Charges") with the Equal Employment Opportunity Commission ("EEOC") and received Notices of Right to Sue less than 90 days before initiating this litigation. [Filing No. 44 at 3.]

[3] Plaintiffs list the defamation count as "Count VII," but the Court assumes this is a typographical error since the sexual battery count, which precedes the defamation count, is also listed as "Count VII." [Filing No. 44 at 35-36.] The Court will refer to the defamation count as "Count VIII."

jurisdiction exists for his or her claims.  *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief.  The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the…claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).  In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff.  *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).  A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief.  *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).  Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level."  *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).  This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

### B. Discussion

The Court first considers the Motion to Dismiss filed by the State and Attorney General Hill in his official capacity, [Filing No. 91], and then considers the Motion to Dismiss filed by Attorney General Hill in his individual capacity, [Filing No. 85].

1. *Motion to Dismiss Filed by the State and Attorney General Hill in his Official Capacity [Filing No. 91]*

   a. Plaintiffs' Claims Against the State

Plaintiffs assert two claims against the State – sexual harassment and retaliation in violation of Title VII (Counts I and II). [Filing No. 44 at 30-32.] The State argues that Plaintiffs' Title VII claims are fatally flawed because Plaintiffs are not covered by Title VII since Ms. DaSilva, Ms. Lozano, and Ms. McLemore fall within two exceptions to Title VII (the "personal staff" and "immediate supervisor" exceptions), that the State is not their employer, and that they should have proceeded under the Government Employee Rights Act of 1991, 42 U.S.C. § 2000e-16a, *et seq.* ("GERA"). [Filing No. 92 at 12-14.]

Plaintiffs argue in their response that neither Ms. DaSilva, Ms. Lozano, nor Ms. McLemore meet the "personal staff" exception to Title VII, and that the State is their employer. [Filing No. 101 at 6-10.] Plaintiffs argue that the issue of whether the State is the proper employer is not "well-settled," and that while generally the issue "depends on the entity that has 'hiring and firing authority,'" there is "a lack of clear guidance in Seventh Circuit precedent, particularly involving similar facts as those presented in the instant case." [Filing No. 101 at 9.] Plaintiffs also assert that GERA does not preclude their Title VII claims. [Filing No. 101 at 10-11.]

The State reiterates its arguments in its reply. [Filing No. 103 at 2-5.]

The Seventh Circuit has instructed that "Title VII actions must be brought against the 'employer,'" and "[i]n suits against state entities, that term is understood to mean the particular agency or part of the state apparatus that has actual hiring and firing responsibility." *Hearne v. Bd. of Educ. of City of Chicago*, 185 F.3d 770, 777 (7th Cir. 1999); *see also Holman v. Indiana*, 211 F.3d 399, 401 n.1 (7th Cir. 2000) (plaintiff could not bring Title VII claims against State of Indiana where Indiana Department of Transportation had the "actual hiring and firing responsibility" over

plaintiff); *Mehrberg v. Illinois*, 2018 WL 6790488, at * 4 (N.D. Ill. 2018) (dismissing Title VII claims against the State of Illinois where the court "finds it implausible that the State, rather than Department [of Commerce and Economic Activity], had actual hiring and firing responsibility").

Under Indiana law, the House has hiring and firing responsibility over Ms. Lozano, who is a Legislative Assistant for the House; the Senate had hiring and firing responsibility over Ms. DaSilva, who was a Legislative Assistant for the Senate until recently, [Filing No. 59 at 3]; and the Senate has hiring and firing responsibility over Ms. McLemore, who is the Communications Director for the Indiana Senate Democrat Caucus. Specifically, the Indiana General Assembly is the legislative authority of the State, and is made up of the House and Senate. Ind. Const. Art. 4, § 1. The Indiana Constitution gives the House and Senate "all powers, necessary for a branch of the Legislative department of a free and independent State." Ind. Const. Art. 4, § 16. These "powers" include "the ability to appoint 'officers and employees whose duties are an incident to its legislative function.'" *Common Cause, Inc. v. State*, 691 N.E.2d 1358, 1360 (Ind. Ct. App. 1998) (quoting *Tucker v. State*, 35 N.E.2d 270, 284 (1941)).

Because the House had hiring and firing power over Ms. Lozano, and the Senate had or has hiring and firing power over Ms. DaSilva and Ms. McLemore, they are their respective employers.[4] Accordingly, the Court need not address the State's and Attorney General Hill's other

---

[4] Plaintiffs argue that the Seventh Circuit "acknowledged that *Hearne* and *Holman* pertained to situations delineating between local and state governments as employers rather than state agencies and a state itself, which they said was a 'much finer difference.'" [Filing No. 101 at 9] (quoting *Tibbs v. Admin. Office of the Illinois Courts*, 860 F.3d 502, 507-08 (7th Cir. 2017).] But the Seventh Circuit in *Tibbs* expressly decided not to "wrestle this issue to the ground in this appeal, where the decision does not depend on it," stating only that "technicalities will seldom if ever be decisive." *Id.* at 508. *See also Mehrberg*, 2018 WL 6790488 at *4 ("*Tibbs* did not overrule *Hearne* and *Holman* and thus the Court concludes that Plaintiff cannot state a claim under…Title VII against the State as a matter of law"). Here, the Court bases its decision not on "technicalities," but on the fact that the House has hiring and firing responsibility for Ms. Lozano, and the Senate had or has hiring and firing responsibility for Ms. DaSilva and Ms. McLemore.

arguments and **GRANTS** their Motion to Dismiss as it relates to the Title VII discrimination and retaliation claims (Counts I and II).

b. <u>Plaintiffs' Claims Against Attorney General Hill in His Official Capacity</u>

Plaintiffs assert § 1983 claims against Attorney General Hill in his official capacity for sexual harassment, discrimination, and retaliation in violation of the Equal Protection Clause (Counts III and IV), and violation of the Substantive Due Process Clause (Count V). [Filing No. 44 at 32-35.] Attorney General Hill asserts that there is no claim for retaliation under the Equal Protection Clause. [Filing No. 92 at 14.] He argues that the only relief Plaintiffs can seek in an official-capacity suit is prospective injunctive relief, and that Plaintiffs do not seek recognized forms of injunctive relief. [Filing No. 92 at 14-15.] For example, he argues that Plaintiffs seek a retraction of all defamatory statements and/or an apology for the statements, and their request is "not cognizable." [Filing No. 92 at 14.] Attorney General Hill also contends that Plaintiffs' request for a permanent injunction that enjoins him from committing future constitutional violations is "so overbroad as to evade all judicially manageable standards." [Filing No. 92 at 15.]

In response, Plaintiffs argue that "State Defendants have misapplied the caselaw in support of [the] contention" that there is "no cognizable cause of action under § 1983 for Fourteenth Amendment causes of action." [Filing No. 101 at 11.]

In his reply, Attorney General Hill argues that Plaintiffs did not respond to his arguments regarding Counts III and V – regarding the inappropriate nature of Plaintiffs' requested injunctive relief – at all, and provide only a two-sentence "perfunctory" response to their argument regarding the § 1983 retaliation claim. [Filing No. 103 at 4-5.]

First, as to Plaintiffs' retaliation claim under the Equal Protection Clause, the Seventh Circuit Court of Appeals recently reiterated its instruction that "'the right to be free from retaliation

may be vindicated under the First Amendment or Title VII, but not the equal protection clause.'" *Robertson v. Dept. of Health Servs.*, 949 F.3d 371, 374 n.2 (7th Cir. 2020) (quoting *Boyd v. Ill. State Police,* 384 F.3d 888, 898 (7th Cir. 2004)). Plaintiffs' retaliation claim, which is only brought under the Equal Protection Clause, fails as a matter of law and the Court **GRANTS** Attorney General Hill's Motion to Dismiss that claim (Count IV).

Second, as to Counts III and V, Plaintiffs do not respond to Attorney General Hill's argument that the prospective relief they seek in connection with those claims are not recognized remedies in this context. "Failure to respond to an argument…results in waiver," *Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010), and the Court could grant Attorney General Hill's Motion to Dismiss Counts III and V on that basis alone. In any event, the injunctive relief Plaintiffs seek – an injunction enjoining Attorney General Hill from committing future constitutional violations and requiring him to "retract all defamatory statements and/or apologize for such statements," [Filing No. 44 at 37] – is overbroad. *See E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 841 (7th Cir. 2013) ("An injunction that does no more than order a defeated litigant to obey the law raises several concerns. One is overbreadth. An obey-the-law injunction departs from the traditional equitable principle that injunctions should prohibit no more than the violation established in the litigation or similar conduct reasonably related to the violation"); *Kesterson v. Kent State Univ.*, 345 F. Supp. 3d 855, 886 (N.D. Oh. 2018 ("An apology for past wrongdoing is not prospective injunctive relief and is not the type of relief that is cognizable in a § 1983 action against a state official in his official capacity"). The Court **GRANTS** Attorney General Hill's Motion to Dismiss as it relates to Counts III and V.

To re-cap, the Motion to Dismiss filed by the State and Attorney General Hill in his official capacity is **GRANTED** because: (1) the State is not the employer of Ms. DaSilva, Ms. Lozano, or

Ms. McLemore, so their Title VII discrimination and retaliation claims fail as a matter of law; (2) there is no cognizable claim for retaliation under the Equal Protection Clause, as asserted against Attorney General Hill in his official capacity; and (3) the prospective relief Plaintiffs seek in connection with Counts III and V is inappropriate.

### 2. *Motion to Dismiss Filed by Attorney General Hill in His Individual Capacity* [*Filing No. 85*]

Plaintiffs set forth seven claims against Attorney General Hill in his individual capacity: (1) a § 1983 claim for sexual harassment and discrimination in violation of the Equal Protection Clause (Count III); (2) a § 1983 claim for retaliation in violation of the Equal Protection Clause (Count IV); (3) a § 1983 claim for violation of the Substantive Due Process Clause (Count V); (4) battery (Count VI); (5) sexual battery (Count VII); (6) defamation (Count VIII); and (7) false light invasion of privacy (County IX). [Filing No. 44 at 32-37.]

### a. Federal Claims Against Attorney General Hill in His Individual Capacity

Attorney General Hill argues that all of Plaintiffs' federal claims asserted against him in his individual capacity fail because he was not acting under color of state law, and he then sets forth additional arguments specific to each claim. Because the under-color-of-state-law issue applies to all of Plaintiffs' federal claims against Attorney General Hill in his individual capacity, and is potentially outcome-determinative, the Court addresses that issue first before considering Attorney General Hill's remaining, claim-specific arguments. *See Groman v. Twp. Of Manalapan*, *47 F.3d 628, 638 (3d Cir. 1995)* ("The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law").

### i.    Under Color of State Law Analysis

Attorney General Hill argues that the conduct of which Plaintiffs complain did not occur

"under color of state law," and so cannot be a basis for § 1983 liability.  [Filing No. 86 at 8-10.]

He contends that Plaintiffs can only satisfy the "under color of state law" requirement "if on March

15, 2018, [he] acted in an official capacity as a public employee or exercised responsibilities

pursuant to state law while at AJ's Lounge."  [Filing No. 86 at 9.]  Attorney General Hill asserts

that Plaintiffs "virtually admit" that he was not acting under color of state law because they "allege

no official action on his part at this legislative branch event and, moreover, they assert that past

Attorney Generals never attended this informal, after-hours party at a local bar."  [Filing No. 86 at

9.]

In response, Plaintiffs argue that they have adequately alleged that Attorney General Hill

was acting under color of state law.  [Filing No. 97 at 13-18.]  Plaintiffs point to their allegations

that Attorney General Hill said to Ms. Lozano and Ms. McLemore at the Sine Die Celebration "Do

you know who I am?"  [Filing No. 97 at 14.]  They also argue that "[b]y virtue of being Indiana's

highest law enforcement official…, Hill attended the Sine Die Celebration in his capacity of the

Indiana Attorney General."  [Filing No. 97 at 15.]  As to their retaliation claim, Plaintiffs argue

that they have alleged that Attorney General Hill used his official State of Indiana Attorney

General Twitter and Facebook accounts to threaten, intimidate, and defame them.  [Filing No. 97

at 16.]

In his reply, Attorney General Hill argues that Plaintiffs' own allegations – including that

the Sine Die Celebration was a late night party which had never been attended by Attorney General

Hill or his predecessors – indicate that he was not acting under color of state law that evening.

[Filing No. 102 at 6-7.]  Attorney General Hill also argues that allegations that he said, "Do you

know who I am?" at the Sine Die Celebration are not enough to indicate that he acted under color of state law, and that being a "state actor" is not the same as acting "under color of state law." [Filing No. 102 at 7-8.]

The Seventh Circuit Court of Appeals recently explained that "'[n]o set formula exists' for determining whether a particular governmental action is taken under color of state or federal law; our inquiry 'focuses on the nature of that action and functional capacity of the actor.'" *Harnishfeger v. United States*, 943 F.3d 1105, 1119 (7th Cir. 2019) (quoting *Knutson v. Wis. Air Nat'l Guard*, 995 F.2d 765, 767 (7th Cir. 1993)). An action is taken under color of state law "'when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Barnes v. City of Centralia, Ill.*, 943 F.3d 826, 831 (7th Cir. 2019) (quoting *Honaker v. Smith*, 256 F.3d 477, 484-85 (7th Cir. 2001)). "A state officer's conduct does not constitute acting under color of state law unless it is 'related in some way to the performance of the duties of the state office.'" *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010). "Section 1983 does not cover disputes between private citizens, even if one happens to be an officer." *Plaats v. Barthelemy*, 641 Fed. App'x 624, 627 (7th Cir. 2016).

In considering whether Plaintiffs have alleged that Attorney General Hill was acting under color of state law, it is important to recognize that the concepts of acting under color of state law and acting within the scope of employment, though "closely related," are "not identical." *Wilson v. City of Chicago*, 120 F.3d 681, 684 (7th Cir. 1997); *see also Coleman v. Smith*, 814 F.2d 1142, 1149 (7th Cir. 1987) ("We do not confuse the 'under color of state law' element of section 1983 with the 'scope of employment' requirement of the indemnification statute"). Specifically, within the scope of employment is when the conduct is "of the same general nature as that authorized by

the public employer [or] incidental to the conduct authorized by the employer," *Katz-Crank v. Haskett*, 843 F.3d 641, 651 (7th Cir. 2016) (citation and quotation omitted), while an employee can act under color of state law even when he "misuse[s] state power," *Honaker*, 256 F.3d at 484. *See also Lopez v. Vanderwater*, 620 F.2d 1229, 1236 (7th Cir. 1980) (state court judge who undertook prosecution of case acted under color of state law because "[a]ction taken by a state official who is cloaked with official power and who purports to be acting under color of official right…is taken under color of state law whether or not the action is in fact in excess of the authority actually delegated to the official under state law").

Some of Plaintiffs' allegations indicate that Attorney General Hill was not acting under color of state law at the Sine Die Celebration, while others might support a finding that he was acting under color of state law. For example, Plaintiffs allege that Attorney General Hill is not involved in the legislative process nor is he a member of the General Assembly, the Sine Die Celebration was to celebrate the end of the legislative session, and Attorney General Hill "was not an expected attendee at the Sine Die Celebration." [Filing No. 44 at 6.] However, Plaintiffs also allege that Attorney General Hill said, "Do you know who I am?" to Ms. Lozano and Ms. McLemore at the Sine Die Celebration, before engaging in the alleged acts that form the basis of Plaintiffs' claims. *See Plaats v. City of Lafayette*, 2015 WL 5773724, at *2 (7th Cir. 2015) ("The outward use of state-conferred authority appears to be critical in the 'color of law' analysis. When an officer (even an off-duty officer) invokes the power of his state office or his police persona in a confrontation, courts tend to find that the officer was acting under color of state law").

In short, the Court cannot conclude at the motion to dismiss stage – when it must take all of Plaintiffs' allegations as true – that Attorney General Hill was not acting under color of state law at the Sine Die Celebration. The Court cannot determine solely on the allegations of the

Amended Complaint that Attorney General Hill was not misusing any power that he held by virtue of state law, that the alleged wrongdoing was not made possible because of his position as Attorney General, or that his alleged actions were not related in any way to the performance of his duties as Attorney General. *Barnes*, 943 F.3d at 831; *Wilson*, 624 F.3d at 392.

### ii. Sexual Harassment and Discrimination Under the Equal Protection Clause (Count III)

Attorney General Hill argues that Plaintiffs' sexual harassment and discrimination claim under the Equal Protection Clause must be dismissed because an Equal Protection claim "follows the contours of a Title VII allegation of sexual harassment," and Plaintiffs cannot recover against him because he is neither their employer nor their supervisor. [Filing No. 86 at 11-14 (citation and quotation omitted).]

In their response, Plaintiffs contend that they need not establish an employment relationship with Attorney General Hill, but need only allege that he acted under color of state law. [Filing No. 97 at 18-19.]

In his reply, Attorney General Hill reiterates his argument that Plaintiffs' Equal Protection Clause claim fails because the alleged acts did not occur during the course of an employment relationship. [Filing No. 102 at 10.]

"To establish a prima facie case of discrimination under the equal protection clause, [plaintiff is] required to show that [she] is a member of a protected class, that [she] is otherwise similarly situated to members of the unprotected class, and that [she] was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (citation and quotation omitted). Additionally, "[a] person bringing an action under the Equal Protection Clause must show intentional discrimination against [her] because of [her] membership in a particular class, not merely that [she] was treated unfairly as an individual." *Herro v. City of*

*Milwaukee*, 44 F.3d 550, 552 (7th Cir. 1995) (internal quotation omitted). "'[T]he same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection.'" *Word v. City of Chicago*, 946 F.3d 391, 397 n.4 (7th Cir. 2020) (quoting *Williams v. Seniff*, 342 F.3d 774, 788 n.13 (7th Cir. 2003)).

Plaintiffs' only argument on the issue of whether they can assert a sexual harassment/discrimination claim under the Equal Protection Clause is that they have sufficiently alleged that Attorney General Hill was acting under color of state law. But this is a separate issue from whether Plaintiffs have adequately alleged an Equal Protection claim under the circumstances presented here. Plaintiffs set forth two groups of allegations in their Amended Complaint: (1) allegations related to Attorney General Hill's actions at the Sine Die Celebration; and (2) allegations related to their treatment after they reported his alleged actions. Neither group of allegations form a basis for an Equal Protection claim.

First, Plaintiffs do not appear to rely on the Sine Die Celebration allegations in connection with their sexual harassment/discrimination claim under the Equal Protection Clause. Instead, they focus on "a hostile work environment, and discrimination and denial of equal employment opportunities because of their sex." [Filing No. 44 at 32.] In other words, Attorney General Hill's actions at the Sine Die Celebration are not what Plaintiffs complain of in this claim – it is the aftermath of those actions.

As to their second group of allegations, Plaintiffs allege that Attorney General Hill reacted to their reports of his actions in such a way as to create a hostile work environment. [*See, e.g.*, Filing No. 44 at 12 (alleging that after they complained of Attorney General Hill's actions at the Sine Die Celebration, Attorney General Hill used his office to threaten, intimidate, and defame Plaintiffs).] But these allegations relate to how Attorney General Hill allegedly retaliated against

26

Plaintiffs for reporting his behavior at the Sine Die Celebration, and not to treating Plaintiffs differently because they are females. *See Trautvetter v. Quick*, 916 F.2d 1140, 1151 (7th Cir. 1990) (discrimination claim under the Equal Protection Clause "must show an intent to discriminate because of [plaintiff's] status as a female and not because of characteristics of her gender which are personal to her…. If this distinction – subtle as it is – is not maintained, any consensual workplace romance involving a state supervisor and employee which soured for one reason or another could give rise to equal protection claims if the employee simply alleges that his or her supervisor's conduct during the term of the romance constituted 'sexual harassment'"); *King v. Bd. of Regents of Univ. of Wisconsin Sys.*, 898 F.2d 533, 539 (7th Cir. 1990) ("If, as a purely personal matter, a boss and a particular employee are not compatible, it would not be sexually discriminatory to harass the employee on that basis"). And to the extent that Plaintiffs complain about the actions of others after they reported Attorney General Hill's actions at the Sine Die Celebration, [*see, e.g.*, Filing No. 44 at 17-20 (alleging that certain lawmakers made comments regarding the allegations that made Plaintiffs uncomfortable and caused them to limit their attendance at work-related social events)], these actions are not attributable to Attorney General Hill. Indeed, Attorney General Hill was not Plaintiffs' employer or supervisor, or even their co-worker.

Most problematic for Plaintiffs' claim, however, and relevant to both sets of allegations, is that the Seventh Circuit has only recognized such a claim where there is an employment relationship. *See, e.g.*, *Trautvetter*, 916 F.2d at 1152 (recognizing but affirming grant of summary judgment on discrimination claim brought under the Equal Protection Clause by teacher against principal of the school where she was employed); *King*, 898 F.2d at 539 (recognizing sexual harassment claim under the Equal Protection Clause by employee of university against her

supervisor); *Bohen v. City of East Chicago, Ind.*, 799 F.2d 1180, 1185 (7th Cir. 1986) ("Sexual harassment of female employee by a state employer constitutes sex discrimination for purposes of the equal protection clause of the fourteenth amendment"); *Huebschen v. Dept. of Health & Social Servs.*, 716 F.2d 1167, 1172 (7th Cir. 1983) (recognizing discrimination claim based on Equal Protection Clause brought by employee of state agency against supervisor). And while some district courts within the Seventh Circuit have recognized a discrimination/harassment claim under the Equal Protection Clause outside of the traditional employer/employee relationship, those cases – which are not binding on this Court in any event – all involved relationships that at least were akin to an employer/employee relationship. *See, e.g., Twyman v. Burton*, 757 F. Supp.2d 804, 810 (S.D. Ind. 2010) (recognizing harassment claim under the Equal Protection Clause brought by confidential informant against police detectives who informant assisted in drug investigations); *Lytle v. Bd. of Lake Cty. Com'rs*, 2007 WL 433539, at *3 (N.D. Ind. 2007) (recognizing sexual harassment claim under the Equal Protection Clause brought by state agency intern against employee of state agency).

Plaintiffs seek to stretch the contours of an Equal Protection claim in the discrimination/sexual harassment context by suggesting that Attorney General Hill need only be acting under color of state law for their claim to be viable. But more is needed. The Court is not willing to expand a discrimination/sexual harassment claim under the Equal Protection Clause beyond the employer/employee relationship, or at least a relationship akin to the employer/employee relationship. *See Decker v. Tinnel*, 2005 WL 3501705 (N.D. Ind. 2005) (rejecting Equal Protection claim stemming from police officer attempting to kiss and inappropriately touching eighteen year-old during ride-along, because "there is no evidence that establishes that [plaintiff and defendant] had a previous relationship of any kind"). Here, where

Attorney General Hill was not Plaintiffs' employer or supervisor, was not even a co-worker, and in fact worked in a separate branch of the state government, there simply is not a relationship akin to the employer/employee relationship that warrants extending the contours of an Equal Protection claim to the circumstances presented in this case. Accordingly, the Court **GRANTS** Attorney General Hill's Motion to Dismiss Plaintiffs' sexual harassment/discrimination claim brought under the Equal Protection Clause (Count III).

### iii. Retaliation Under the Equal Protection Clause (Count IV)

In his Motion to Dismiss, Attorney General Hill argues that there is not a cognizable claim under the Equal Protection Clause for retaliation. [Filing No. 86 at 14.] Plaintiffs argue in response that a retaliation claim under the Equal Protection Clause is cognizable because they are claiming that Attorney General Hill retaliated against them due to the fact that they are females, which is a protected characteristic. [Filing No. 97 at 17.] Attorney General Hill reiterates in his reply that Plaintiffs' retaliation claim fails as a matter of law. [Filing No. 102 at 11.]

As discussed above, the Seventh Circuit has found that there is not a cognizable claim for retaliation under the Equal Protection Clause. Plaintiffs argue that their retaliation claim is a little different, and point to *Locke v. Haessig*, 788 F.3d 662 (7th Cir. 2015), in which the Seventh Circuit found that the plaintiff was not "asserting a general right to be free from retaliation," but rather was alleging that defendant retaliated against him "because he was a man rather than a woman complaining of sexual harassment." *Id.* at 672. Here, Plaintiffs have not alleged that they faced retaliation because they are women and not men. Instead, they allege that they were retaliated against because they complained of Attorney General Hill's actions at the Sine Die Celebration and the treatment they received afterwards. [*See* Filing No. 44 at 33 (Plaintiffs alleging in Count IV that they suffered from retaliation "because [they] raised concerns about discrimination in the

workplace and because they reported discrimination and retaliation complaints against Defendants")]  This is the type of retaliation that the Seventh Circuit has found cannot be remedied by the Equal Protection Clause.  *Robertson*, 949 F.3d at 374 n.2 (noting that plaintiff's claim that she faced retaliation for complaining about discrimination "would not be tenable" as an Equal Protection claim since "the right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause") (citation and quotation omitted).

The Court **GRANTS** Attorney General Hill's Motion to Dismiss Plaintiffs' retaliation claim under the Equal Protection Clause (Count IV).

### iv.      Substantive Due Process Claim (Count V)

Plaintiffs allege that they "suffered unwanted and unwelcome physical contact of a sexual nature that constitutes a violation of the Plaintiffs' liberty interest in their bodily integrity, as provided by the Due Process Clause of the Fourteenth Amendment of the United States Constitution."  [Filing No. 44 at 34.]  In support of his Motion to Dismiss, Attorney General Hill contends that the alleged sexual advances do not support a substantive due process claim because they do not "shock the conscience."  [Filing No. 86 at 14-20.]  Plaintiffs respond that they have adequately pled action which "shocks the conscience," [Filing No. 97 at 19-20], and Attorney General Hill reiterates his arguments in his reply, [Filing No. 97 at 20].

"[T]he scope of substantive due process is very limited."  *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005).  A plaintiff must allege that "a fundamental right or liberty" was violated by the government, and that the violation was "arbitrary and irrational."  *Campos v. Cook Cty.*, 932 F.3d 972, 975 (7th Cir. 2019).  Additionally, the violation must be so arbitrary and irrational as to "shock[ ] the conscience."  *Remer v. Burlington Area Sch. Dist.*, 286 F.3d 1007, 1013 (7th Cir. 2002).  "Only the most egregious official conduct is arbitrary in the constitutional sense."  *Id.*

(citation and quotation omitted). In the context of battery – as alleged here – "the right to bodily integrity is infringed only by a serious battery – not a battery that is nominal or trivial." *Hye-Young Park v. Hudson*, 2018 WL 8803899, at *20 (C.D. Ill. 2018).

The Court finds that the conduct alleged here – Attorney General Hill making inappropriate comments, putting his hand on Ms. DaSilva's back and sliding it down to her buttocks, grabbing Ms. Lozano around the waist and pulling her towards him, putting his hand on Ms. Reardon's back and sliding it down to her buttocks and underneath her dress, and rubbing Ms. McLemore's back – does not meet the "shocks-the-conscience" standard that is required to support a substantive due process claim. Similar claims have been repeatedly rejected throughout the district courts of this Circuit. *See, e.g.*, *Park*, 2018 WL 8803899, at *20 (finding that defendant's behavior in grabbing plaintiff's shoulders to prevent her from leaving after showing her a pornographic video did not shock the conscience); *Twyman*, 757 F. Supp. 2d at 809 (defendant's act of showing plaintiff a picture of a sex toy and placing it on plaintiff's seat so that plaintiff would sit on it did not support substantive due process claim); *Nagle v. McKernan*, 2007 WL 2903179, at *2 (N.D. Ill. 2007) (fire marshal's actions of writing love note and intimately pressing face against plaintiff and breathing on her neck during inspection of plaintiff's workplace was not a substantive due process violation); *Decker*, 2005 WL 3501705, at *9 (holding that police officer's conduct of asking eighteen year-old who was on a ride-along with him to strip, leaning over and trying to kiss her, forcing his hand between her closed thighs, trying to push his tongue down her throat, and placing his hands on her breasts "[a]lthough improper and reprehensible,…does not rise to the level of a constitutional violation").

As other courts in the Seventh Circuit have found, the alleged conduct is potentially criminal, improper, and reprehensible. It is not, however, unconstitutional just because it was

allegedly committed by an intoxicated Attorney General. The Court **GRANTS** Attorney General Hill's Motion to Dismiss Plaintiffs' Substantive Due Process claim (Count V).[5]

> b. State Law Claims Against Attorney General Hill in His Individual Capacity

Because the Court has dismissed all federal claims from this lawsuit, it must consider whether to exercise supplemental jurisdiction over the remaining state law claims for sexual battery, battery, defamation, and false light invasion of privacy against Attorney General Hill in his individual capacity. 28 U.S.C. § 1367(c)(3) provides that "district courts may decline to exercise supplemental jurisdiction over a claim…if the district court has dismissed all claims over which it has original jurisdiction." The Seventh Circuit has recently observed that "there is a general presumption that the court will relinquish supplemental jurisdiction and dismiss the state-law claims without prejudice." *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 618 (7th Cir. 2018) (citing *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479-80 (7th Cir. 2012)). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ*, 672 F.3d at 479 (citations and quotations omitted). Further, the Seventh Circuit has identified circumstances that may displace the presumption, namely:

> (1) The statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Id.* at 480 (citations and quotations omitted).

---

[5] Because the Court has granted Attorney General Hill's Motion to Dismiss the federal claims brought against him in his individual capacity, it need not address his additional argument that he is entitled to qualified immunity in connection with those claims.

The first factor is not at issue in this case because "Indiana's savings statute, Ind. Code § 34-11-8-1, and the tolling provision of 28 U.S.C. § 1367(d) foreclose any concerns related to the statue of limitations." *Plaats*, 2015 WL 5773724 at *4; *see also Wozniak v. Ind. Univ. Bd. of Trustees*, 2007 WL 869165, at *7 (S.D. Ind. 2007) (stating that the "first factor is not here, or even normally, a concern because the Indiana 'journeys account statute,' Ind. Code § 34-11-8-1, generally gives plaintiffs three years to refile claims not dismissed adversely or because of the plaintiff's negligence in prosecuting"). As to the second factor, discovery has not yet commenced, and this litigation is in its infancy. Finally, it is not clear how the state law claims should be decided.[6]

Based on the factors set forth by the Seventh Circuit, the Court declines to exercise supplemental jurisdiction over Plaintiffs' battery, defamation, and false light invasion of privacy claims[7] and **DISMISSES** those claims **WITHOUT PREJUDICE** to re-file them in state court.

---

[6] This is with the exception of Plaintiffs' sexual battery claim, which is not recognized under Indiana law. *Zander v. Orlich*, 2017 WL 2289349, at *5 (N.D. Ind. 2017) ("In Indiana, sexual battery is not recognized as a specialized tort separate from battery"). Accordingly, the Court exercises supplemental jurisdiction over the sexual battery claim and **DISMISSES IT WITH PREJUDICE**.

[7] The Court notes that Attorney General Hill would be entitled to immunity in connection with Plaintiffs' defamation and false light invasion of privacy claims in federal court in any event. The Indiana Tort Claims Act ("ITCA"), Ind. Code § 34-13-3-3, provides immunity to governmental employees "acting within the scope of the employee's employment" in certain situations where a common law duty of care might otherwise exist. The ITCA's grant of immunity to governmental employees includes actions stemming from "[t]he performance of a discretionary function." Ind. Code § 34-13-3-3(7). Attorney General Hill issuing the statements that form the basis of Plaintiffs' defamation and false light invasion of privacy claims is considered a "discretionary function" under Indiana law. *See Hostetler v. City of Southport*, 2019 WL 917591, at *8 (S.D. Ind. 2019) (police officers immune from liability for statements that were "an attempt to inform the community"); *St. John v. Fritch*, 2012 WL 3028032, at *15 (S.D. Ind. 2012) (public official's issuance of press release "ar[ose] from his duty to inform the public about the administration of his office," entitling official to absolute immunity under the ITCA); *E.L.C. Elec., Inc. v. Ind. Dept. of Labor*, 825 N.E.2d 16, 23 (Ind. Ct. App. 2005) (affirming trial court's grant of summary

For the reasons discussed above, the Court **GRANTS** the Motion to Dismiss filed by Attorney General Hill in his individual capacity as to Plaintiffs' federal claims, **GRANTS** the Motion to Dismiss as to Plaintiffs' sexual battery claim, and declines to exercise jurisdiction and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' state law claims for battery, defamation, and false light invasion of privacy.  [Filing No. 91.]

### C.  Opportunity To Amend

In their responses to the Motions to Dismiss, Plaintiffs refer to the ability to amend their claims to cure any deficiencies, and request that opportunity should the Motions to Dismiss be granted.  [*See, e.g.*, Filing No. 101 at 11 (Plaintiffs requesting that if the Motion to Dismiss is granted, they be given leave to file a Second Amended Complaint); Filing No. 97 at 2 (same); Filing No. 97 at 15 (arguing that Attorney General Hill testified in a Disciplinary Commission Hearing that he attended the Sine Die Celebration in his capacity as the Attorney General, and stating "Plaintiffs are preparing a Second Amended Complaint to include these newly discovered allegations"); Filing No. 97 at 27 (Plaintiffs requesting to file a Second Amended Complaint if the Motion to Dismiss is granted).]

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend her complaint once as a matter of course in response to a motion to dismiss.  *Brown v. Bowman*, 2011 WL 1296274, *16 (N.D. Ind. 2011).  The 2009 notes to the rule emphasize that this amendment "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion.  A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise

---

judgment because "the discretionary function of informing the public" entitled state defendant to immunity from defamation claims).

might be raised seriatim." Plaintiffs have already taken advantage of Rule 15(a)(1)(B) by filing their Amended Complaint after Defendants moved to dismiss their original Complaint. The opportunity to amend in the face of a motion to dismiss is not limitless, and the opportunity also is not automatic after the Court rules on a motion to dismiss.

Moreover, this Court is the second busiest district in the country as measured by weighted filings per judgeship. United States Courts, U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics (September 30, 2019), https://www.uscourts.gov/sites/default/files /data_tables/fcms_na_distprofile0930.2019.pdf. Plaintiffs amended once in response to Defendants' Motions to Dismiss, then chose to have the Court rule on the Motions to Dismiss their Amended Complaint. Many of the arguments in the original Motions to Dismiss were again raised in the subsequent Motions to Dismiss, and Plaintiffs chose to challenge those arguments and obtain a ruling from the Court. This Court has neither the time nor the resources to rule on multiple motions to dismiss in order to help Plaintiffs craft their claims.

Additionally, the Court cannot conceive of how Plaintiffs could amend their Amended Complaint to cure the deficiencies noted above – that the State is not Plaintiffs' employer for purposes of the Title VII claims, that the injunctive relief Plaintiffs seek against Attorney General Hill in his official capacity is not cognizable, that the § 1983 claims against Attorney General Hill in his individual capacity fail as a matter of law under the circumstances presented in this case, and that there is no claim for sexual battery under Indiana law. As outlined above, the Court **DISMISSES** Plaintiffs' claims against the State and Attorney General Hill in his official capacity **WITH PREJUDICE**, and **DISMISSES** Plaintiffs' federal claims and his state law sexual battery claim against Attorney General Hill in his individual capacity **WITH PREJUDICE**. Plaintiffs'

battery, defamation, and false light invasion of privacy claims against Attorney General Hill in his individual capacity are dismissed **WITHOUT PREJUDICE** to re-file them in state court.

That said, to the extent Plaintiffs wish to file a Second Amended Complaint which sets forth claims that the Court has not already found fail to state a claim – for example, Title VII claims against the House and the Senate on behalf of Ms. Lozano, Ms. DaSilva, and Ms. McLemore – it must do so by **March 27, 2020**. Any Second Amended Complaint must be filed with due regard for the substantive rulings contained in this Order, and consistent with Fed. R. Civ. P. 11 and 28 U.S.C. § 1927.

## III.
### AMENDED MOTIONS TO INTERVENE

In their Amended Motions to Intervene, the House and the Senate request permission to intervene as to Plaintiffs' Title VII claims. Because the Court has dismissed those claims, the Amended Motions to Intervene, [Filing No. 56; Filing No. 58], are **DENIED AS MOOT**.

## IV.
### MOTIONS TO STAY

Defendants have filed Motions to Stay the litigation pending the Court's rulings on their Motions to Dismiss. Since the Court has now ruled on the Motions to Dismiss, the Motions to Stay, [Filing No. 87; Filing No. 93], are **DENIED AS MOOT**.

## V.
### CONCLUSION

There is no doubt that the allegations as to Attorney General Hill's actions toward Plaintiffs at the Sine Die Celebration, which the Court must accept as true at this stage of the litigation, describe disgraceful and reprehensible conduct. But the highly offensive nature of the alleged acts does not meet the legal standard necessary to establish a violation of any federal law or the Constitution of the United States by Attorney General Curtis Hill. With respect to Plaintiffs'

allegations about their workplace environment, they may be legally cognizable. However, Plaintiffs may only bring Title VII claims against the governmental entity that employs them, not the State of Indiana. As set forth above:

- The Motion to Dismiss filed by the State and Attorney General Hill in his official capacity, [91], is **GRANTED** and Plaintiffs' claims against the State and Attorney General Hill in his official capacity are **DISMISSED WITH PREJUDICE**;

- The Motion to Dismiss filed by Attorney General Hill in his individual capacity, [85], is **GRANTED** as to Plaintiffs' federal claims and their state law claim for sexual battery, and those claims are **DISMISSED WITH PREJUDICE**. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims for battery, defamation, and false light invasion of privacy, and those claims are **DISMISSED WITHOUT PREJUDICE** to re-file them in state court;

- The Amended Motions to Intervene, [56; 58], are **DENIED AS MOOT**;

- The Motions to Stay, [87; 93], are **DENIED AS MOOT**; and

- To the extent Plaintiffs wish to file a Second Amended Complaint which sets forth claims that the Court has not dismissed with prejudice – for example, Title VII claims against their respective employers – they must do so by **March 27, 2020**. Absent the filing of a Second Amended Complaint, the Court will issue a final judgment thereafter. If a Second Amended Complaint is filed, Plaintiffs may request the issuance of a partial final judgment for their claims against the State and Attorney General Hill.

Date: 3/2/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**